## WILLIAM JOHNSON *vs.* WILLIAM JORDAN.

Where the owner of two adjoining messuages and lots of land, one of which ne occu pies and the other of which he leases, constructs a drain, from the messuage which he leases, through the land which he occupies, into a common sewer, and permits his tenants to use it for ten years and more, and then sells both messuages and lots, on the same day, to different purchasers, and in his deed to the purchaser of the messuage and lot which he formerly leased, does not mention the drain ; such purchaser acquires no right, by the deed, to the use of the drain through the other lot of land, if he, by reasonable labor and expense, can make a drain without going through that land.

TRESPASS for breaking and entering the plaintiff's close, subverting his soil, &c. The parties agreed the following facts :

The plaintiff and defendant, at the time of the alleged trespass, severally owned in fee a messuage and land, adjoining each

to the other. and fronting on Temple Street in Boston. In 1804, both said messuages and lands were owned by William Breed, who occupied one of them himself, and laid an artificial drain or conduit through the same into Ridgway's Lane ; which drain was used by said Breed, and also, by his permission, by the tenants to whom he leased the other messuage, for the purpose of leading off waste water from the buildings on his said lands, into a common sewer of the city, situated in said lane. Said' Breed died seized of said messuages, &c. in 1817, having devised the use thereof to his wife for life, and the remainder to Peter O. Thacher in fee. After said Breed's decease, his widow took possession of said messuages, &c. and held the same, occupying one of them, and leasing the other, until her death, April 10th, 1825, when said Thacher took possession thereof, and continued seized until the 13th of May, 1825, on which day he divided the same into several lots ; the messuage of the defendant, in which a portion of the drain aforesaid was situated, being one, and the messuage of the plaintiff, in which another portion of said drain was situated, being the other ; and on said day sold each of said lots at public auction. The messuage of the defendant was purchased, at said sale, by Enoch Kendall, and the messuage of the plaintiff by John P. Thorndike, as appears by said Thacher's deeds conveying the same, which are to be taken as part of this case. In November, 1825, said Thorndike conveyed his messuage to the plaintiff, and in July, 1826, said Kendall's executor conveyed his said messuage to the defendant.

After the said conveyances by Thacher, the waste water from the defendant's messuage ran in said drain through the plaintiff's land, into the common sewer, until May 1st, 1835. On that day, the plaintiff intentionally stopped up that part of the drain leading from the defendant's messuage, which was on the plaintiff's land ; and in June following, as alleged in the plaintiff's declaration, the defendant entered on the plaintiff's land and opened the drain and removed the obstruction, doing no damage except such as was necessary to accomplish said act, and then closed the drain and restored the soil to its former condition.

The parties also agreed, that any further evidence, legally admissible, might be introduced by either party, and that the jury should find, under the direction of the court, whether the defendant was or was not guilty, and if guilty, assess damages ; and that either party might except to the ruling of the judge before whom the case should be tried, upon the foregoing facts agreed, and upon the further evidence that should be introduced.

The deed from Thacher to Kendall was of a lot of land, without mention of the drain, or of privileges and appurtenances. It was stated in said deed that Thorndike had the right to have a gutter on the side of the stable adjoining the lot conveyed to Kendall ; and the deed was on condition that Kendall and his assigns should never open any windows or light on the side of any building that might be erected on the premises next to the mansion house sold to Thorndike.

At the trial before *Wilde*, J. the foregoing statement of facts, with the papers therein referred to, were submitted to the court and jury. The defendant was also permitted to introduce evidence to prove that at the time of the aforesaid deeds of conveyance, made by Thacher, no drain could be made, with reasonable labor and expense, to carry off the waste water from the sink in the defendant's messuage, in any other direction than through said land of the plaintiff, and therefore that said drain was a drain of necessity.

The plaintiff was then permitted to introduce evidence to prove, that at the time aforesaid, and ever since, a drain could conveniently have been made, with reasonable labor and expense, from said sink, without going through the plaintiff's land as aforesaid.

The judge instructed the jury, that upon the facts agreed, if they were satisfied, from the other evidence introduced by the parties, that with reasonable labor and expense, a drain could be conveniently made, without going through the plaintiff's land, they should return a verdict for the plaintiff. To this instruction the defendant excepted.

A verdict was returned for the plaintiff. Judgment to be rendered thereon, if the instruction of the judge was correct ; otherwise, the verdict to be set aside, and a new trial granted.

This case was argued at March term, 1840.

*B. R. Curtis*, for the defendant. If the defendant is entitled to the easement in question, his act, complained of in the plaintiff's declaration, was not a trespass. *Colburn,* v. *Richards*, 13 Mass. 420.

The easement was in existence and use, and legally appurtenant, and necessary to the use of the messuage, when Thacher conveyed to Kendall, and therefore passed without express words of grant. *Leonard* v. *White*, 7 Mass. 8. 3 Kent Com. (3d ed.) 420. *Nicholas* v. *Chamberlain*, Cro. Jac. 121. Com. Dig. Grant, E. 9. Bac. Ab. Grants, I. 4. *Hazard* v. *Robinson*, 3 Mason, 278, and cases there cited. *U. States* v. *Appleton*, 1 Sumner, 492. *Story* v. *Odin*, 12 Mass. 157. *New Ipswich Factory* v. *Batchelder*, 3 N. Hamp. 190. *Kent* v. *White*, 10 Pick. 138. The principle of these cases applies, it is submitted, as well where a grantor sells two lots at the same time, to different grantees, as where he sells a single lot *Swansborough* v. *Coventry*, 9 Bing. 305. *Compton* v. *Rich ards*, 1 Price, 27.

The use of the drain, in this case, was *necessary* to the enjoyment of the defendant's messuage. The City Ordinances, p. 176, require that every house shall have a drain under ground. A distinction is to be taken between an easement that is merely convenient, and easements that are necessary. The latter pass by a grant of the principal thing. This distinction reconciles the apparently conflicting decisions. See *Robbins* v. *Barnes*, Hob. 131. 1 Bos. & Pul. 374, *note.* Woolrych on Ways, 71. *Grant* v. *Chase*, 17 Mass. 443.

There is also a distinction between what is naturally incident, and what is artificially incident to the thing granted. Use of a drain is natural, though the construction, in this case, was artificial ; as the use of light is natural, though its passage through windows is artificial.

Whether the easement passed by Thacher's deed, as parcel of the thing granted, is to be settled by parol evidence as to the state of the premises when the grant was made. Contemporaneous construction and subsequent use show that this drain was

regarded as appurtenant.    There was a use of it for ten years, by the defendant, without any interruption.  See *Fowle* v. *Bigelow*, 10 Mass. 379.    *Choate* v. *Burnham*, 7 Pick. 278.    *Haven* v. *Brown*, 7 Greenl. 421.    1 Sumner, 503, per Story, J.

*Blair & E. D. Sohier*, for the plaintiff.    The deed from Thacher to Kendall, under which the defendant claims, is not a conveyance of a messuage, but of a lot of land by metes and bounds ; and as it was simultaneous with the deed to Thorndike, it was in the nature of a partition.    No mention is made of the drain, in the former deed, nor are the usual terms "privileges and appurtenances" found in it.    Yet the matter of easements was in the minds of the parties ; for provision is made respecting lights, and a gutter on the side of the stable.

Nothing passes by a deed of land with metes and bounds, except what exists at the time, is necessary to the enjoyment of the land conveyed, and is a natural incident thereof.    *Gaetty* v. *Bethune*, 14 Mass. 49.    *Grant* v. *Chase*, 17 Mass. 443.    *Manning* v. *Smith*, 6 Connect. 289.    *Whalley* v. *Thompson*, 1 Bos. & Pul. 371.    The jury have found that the drain in question was not a drain of necessity.

An easement of this kind is a freehold, and can be created only by deed, or by long adverse, peaceable, and uninterrupted use, which furnishes a presumption of a grant.    *Hewlins* v. *Shippam*, 7 Dowl. & Ryl. 783.    *S. C.* 5 Barn. & Cres. 221. *Shury* v. *Piggot*, 3 Bulst. 339.

*Curtis*, in reply.    In the case in 6 Connect. 289, the case in Cro. Jac. 121, was not noticed, and the decision proceeded on a notion now repudiated, that privileges and appurtenances will not pass unless they are mentioned in the *premises* instead of the *habendum* of the deed.    That decision is contrary to the law as held in England, in this Commonwealth, and in New Hampshire.

SHAW, C. J.    In an action of trespass *quare clausum fregit*, the defendant justifies under a claim of right to enter, and open and cleanse a drain, running from his own house into and through the defendant's premises, to a sewer in Ridgway's Lane.    If he has such a right, it is a good justification ; it being admitted that he entered for that purpose, and did no damage beyond what was

necessary to accomplish it. But the plaintiff contends that the defendant had no right to continue the drain through his premises ; and this is the question for the consideration of the court.

It is very clear that whilst both estates were held by the same. owner, he had a right to carry his drain as he pleased, through any part of his own grounds ; and so long as both tenements were owned and occupied by the same person, no easement was created, or began to be created, in favor of one, and operating as a service or burden upon the other. So long, therefore, as such unity of title and of possession subsists, no right of easement is annexed to one tenement, or charged on another ; and it is quite immaterial how long the drain has subsisted during such owner ship.

If such an owner will convey one of the tenements and retain the other, he may grant the right of drain, or not, to pass with the estate conveyed, or may reserve such a right over the estate conveyed, for the benefit of the one retained, as he pleases. It is matter of contract, and must depend entirely upon the construction of the conveyance. Supposing this to be clear, the question recurs, what construction will the law put upon a conveyance, where the intention of the parties in this respect is not expressed in terms.

In the first place, it is proper to distinguish an artificial gutter of this description, made for the purpose of draining, from a natural watercourse, the rights of parties to which depend upon a different principle. Every person, through whose land a natural watercourse runs, has a right, *publici juris*, to the benefit of it, as it passes through his land, to all the useful purposes to which it may be applied ; and no proprietor of land, on the same watercourse, either above or below, has a right unreasonably to divert it from flowing into his premises, or obstruct it in passing from them, or to corrupt or destroy it. It is inseparably annexed to the soil, and passes with it, not as an easement, nor as an appurtenance, but as parcel. Use does not create it ; and disuse cannot destroy or suspend it. Unity of possession and title in such land with the lands above it or below it does not extinguish or suspend it.

This case is also to be entirely distinguished from one wherein the declivity of the land and the relative position of the tenements are such, that a drain cannot be formed for the benefit of one, without passing through the other. Such a case might stand upon a different ground. But in the present case, it was found by the jury, that a drain could be conveniently made, with reasonable labor and expense, from the defendant's house, without going through the plaintiff's land.

There are some general and well settled rules of construction of conveyances, which tend in some degree to settle the question. The language of the deed is the language of the grantor; he selects the terms, and it being supposed that he will insert all that has been agreed upon beneficial to himself, and will be less careful to state fully all which is beneficial to the grantee, the language is to be construed most strongly against the grantor.

Another well settled rule of construction is, that a grant of any principal thing shall be taken to carry with it all which is necessary to the beneficial enjoyment of the thing granted, and which it is in the power of the grantor to convey. When therefore a party has erected a mill on his own land, and cut an artificial canal for a raceway, through his own land, and then sells the mill, without the land through which such artificial raceway passes, the right to use such raceway through the grantor's land shall pass as a privilege annexed *de facto* to the mill, and necessary to its beneficial use. *New Ipswich Factory* v. *Batchelder*, 3 N. Hamp. 190.

Under these rules, it might perhaps be held, that if a man, owning two tenements, has built a house on one, and annexed thereto a drain, passing through the other, if he sell and convey the house with the appurtenances, such a drain may be construed to be *de facto* annexed as an appurtenance, and pass with it; and because such construction would be most beneficial to the grantee : Whereas, if he were to sell and convey the lower tenement, still owning the upper, it might reasonably be considered that as the right of drainage was not reserved in terms, when it naturally would be, if so intended, it could not be claimed by

the grantor. The grantee of the lower tenement, taking the language of the deed most strongly in his own favor and against the grantor, might reasonably claim to hold his granted estate free of the incumbrance. *Leonard* v. *White,* 7 Mass. 8. *Grant* v. *Chase,* 17 Mass. 443.

But neither of these rules will apply to the present case, because it appears by the deeds themselves, as well as by the other evidence in the case, that the two conveyances from the owner of the whole, under which the parties claim, were simultaneous. It is therefore much more like a partition between tenants in common, where each party takes his estate with the rights, privileges, and incidents inherently attached to it, than like the case of grantor and grantee, where the grantor conveys a part of his land, by metes and bounds, and retains another part to his own use, and where the question is, upon the terms of the deed, whether an easement for drainage has been granted with the estate conveyed over that retained, or reserved over that conveyed, for the benefit of that retained.

In the present case, the estates were both owned and occupied by Mr. Thacher until the sale made to Mr. Thorndike and Mr. Kendall, under whom the plaintiff and defendant respectively derive title. Both of these deeds bear date the same day. Each refers to the estate described, as this day sold to the other. Both deeds must be taken and construed together. In the deed to Thorndike, an easement for a gutter was created; and in the deed to Kendall, the same is charged as a perpetual servitude, in favor of Thorndike and his heirs. The conveyance to Kendall was made upon an onerous condition never to open windows in any building to be erected on the premises, on the side next to the dwellinghouse conveyed to Thorndike; a condition manifestly designed for the benefit of the estate conveyed to the latter; and in the deed to Thorndike, this restriction upon the estate conveyed to Kendall is recited; intended, no doubt, to show that the estate to Thorndike and his assigns, was thereby enhanced in value. The well known maxim of construction, and a very sound one is, *expressio unius exclusio est alterius.* Here was a division of these two tenements intimately connected with each

other, with detailed provisions in respect of the rights which each should have in the other, and the duties to which each should be subject in favor of the other. If it was intended that one should have a perpetual right of drainage through the other, with a right of entry at all times to repair and relay such drain, especially where it is found not to be necessary to the enjoyment of the estate granted, it seems reasonable to suppose that it would have been expressed. As no such right was expressed, we are of opinion that it was not intended to be granted; and as it was not necessary to the enjoyment of the estate, and had not been *de facto* annexed, so as to pass by general words as parcel of the estate, it did not pass to the defendant's grantor by force of the deed. As about ten years only elapsed after these conveyances, and the consequent division of the two tenements between different proprietors, before the grievance complained of, it is very clear that the defendant derived no right to the easement by actual use and enjoyment. Such a right in the estate of another can be created by actual use, only when such use has been adverse, peaceable, and uninterrupted, and continued for a period of twenty years.

*Judgment on the verdict for the plaintiff.*