Folger, J.
 

 We have examined with care the testimony in this ease, particularly those portions of it to which we are pointed by the brief of the appellant, and which he claims show the existence in former days of a natural stream. We are of the opinion that the jury would not have been warranted in finding, that there was ever a natural stream running from the mouth of Indian creek or from the marsh, into the cove. There are some expressions which might indicate this, if they were detached from the mass of the testimony and considered alone. But the strong force and preponderance of it all is, that only in time of high water did the waters from the marsh flow over the banks of the river or of the cove, and not then in a regular and defined channel. When the flood had no more subsided than so as to leave a depth of three or four feet in places on the marsh, there was no overflow, and witnesses for the plaintiff say in explicit terms, that before the ditch was dug, there was no regular channel for the flow of the water into the cove.
 

 The waters which stood upon the marsh, or were held in partial suspense in the earth, were, in legal effect surface waters. They belonged to the owner of the soil on which they stood or through which they soaked. He might lawfully lead them off' in such direction and in such quantity as
 
 *78
 
 he saw fit, and no neighbor conld complain, for no neighbor had a right to receive them by percolation. . The owner had only to see to it, that he did not injure a neighbor by discharging them upon him in unusual quantity, or at unusual place. The following authorities sustain this position:
 
 Ellis
 
 v.
 
 Duncan
 
 (Ct. of App.), cited in
 
 Goodale
 
 v.
 
 Tattle
 
 (29 N. Y., 466);
 
 Buffum
 
 v.
 
 Harris
 
 (5 Rd. I., 243);
 
 Rawstron
 
 v.
 
 Taylor
 
 (11 Exch., 369);
 
 Broadbent
 
 v.
 
 Ramsbotham
 
 (id., 602);
 
 Wheatley
 
 v.
 
 Branch
 
 (1 Casey, 25 Penn. St., 528). •
 

 This state of facts and this rule of law accompanying them, continued until Eewbold after having made ditches, divided the tract into parcels and conveyed the parcels to different grantees. And even had he without having made the ditches, divided the tract and conveyed the parcels to different owners, thé same rule would have applied. The grantee of any parcel would have had the right to have carried off these, being surface waters, without affecting any right of any one to receive them from his land. (See cases above cited.)
 

 But ETewbold being the owner of the whole tract, did very much affect and change its material condition, and the relations of different parts of it to each other. By digging ditches and deepening and extending them, he made a permanent channel by which these waters flowed in a continuous stream, from and through the parcel conveyed to the grantor of the defendant, through other parcels, on to and through the parcel conveyed to the plaintiff’s grantor. There is no doubt but that he benefited the lands now owned by the defendant by freeing them from standing water, and that the benefit conferred would continue so long as the ditch was kept open and free below. There is no doubt but that at the present day the continuance of the ditch and the keeping of it open and free above, would be a benefit to the lands of the plaintiff in the constant and ample supply of good water which it would afford. And if at the time Eewbold made sale of these parcels of land, these reciprocal benefits and burdens were existing and apparent, and were part of the
 
 *79
 
 advantages possessed by these lands, and part of the value attached to them in the estimation of those dealing with each other in regard to them, and if they contracted with a reference to such a condition of the lands, neither Eewbold nor his respective grantees had right after that to change the relative condition of one parcel to the injury of another parcel, in these respects. This .principle is distinctly stated and clearly elucidated in
 
 Lampman
 
 v.
 
 Milks
 
 (21 N. Y., 505), and does not need particular discussion here; and see
 
 Dunkles
 
 v.
 
 The Milton R. R. Co.
 
 (4 Foster N. H., 489).
 

 The only difficulty is whether the facts of this case exactly square with the requirements of the rule in 21 E. Y., laid down in these words: “ The parties are presumed to contract in reference to the condition of the property at the time of the sale, and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts.” Eow some stress is laid upon the purpose which Eewbold had in making the ditch, and it is claimed that it was nought else than to drain his lands. But the application of the rule does not depend solely upon the purpose for which the changes have been made in the tenement by the owner. It is the open and visible effect upon the parts which the execution of the purpose has wrought, which presented to the view of the purchaser, is presumed to influence his mind, and to move him in his bargaining. We have held in
 
 Simmons
 
 v.
 
 Cloonan
 
 (decided December, 1871), that this presumption may be repelled by the actual knowledge of the contracting parties, which may negative any deductions to be drawn from the visible physical condition of the property. And so far, a knowledge of the purpose of the owner is an element. But there was testimony tending to show, that though the first and always the chief purpose of Eewbold was to drain the lands more immediately affected by the marsh, there was an auxiliary purpose, to furnish all other lands a constant and full supply of water. The question whether the purchasers from Eewbold contracted with him, and bought these lands in reference to
 
 *80
 
 their condition at the time of sale, depends as well upon what was their purpose and understanding, and what from the physical view of the land, might be inferred to be the effect upon them in their estimate of their advantages and value with this artificial stream of water led through the different parts of it. And the question for decision at the trial was: Considering all the facts established by the testimony, and all the inferences properly to be made from it, and all the presumptions properly to be indulged, did the grantor of the plaintiff, in arriving at the price he would pay, consider and have a right to consider, as an element of the value of the land he was bidding for, this ditch across the tract giving this supply of water through it ? Now there is testimony tending to an affirmative answer; and in our judgment, it was not a correct disposition of the case to take it from the consideration of the jury, and to direct to them their verdict in the negative.
 

 In the first place we have shown, the fact that this pure, clear water ran to this parcel of land in full and constant supply. This condition of things was open and visible. The presumption arises at once that a person of even ordinary judgment in quest of a farm must perceive this advantage and be influenced by a consideration of its value. Then there is express testimony that the plaintiff’s grantor, .the grantee of Newbold, had been before the conveyance to him, the agent of Newbold and familiar with the premises, and that he knew that Newbold was used to pasture cattle in part on this parcel of land, and that they found their supply of water in the stream and in the cove. The testimony also tends to show that the lands are peculiarly advantageous for the pasturage of cattle in the summer and of keeping them through the winter, with the ultimate purpose of marketing them as fat cattle, and that the supply of this water through this ditch was useful and necessary therefor. And the proof is ample that the water was of use to the land and of great value, and there is testimony tending to show that it is highly necessary to its full enjoyment.
 

 
 *81
 
 We think that with instructions from the court to the jury in accordance with the rules announced in 21 N. Y.
 
 (supra),
 
 it should have been submitted to them to say whether the grantee of Mewbold of the parcel of land now owned by the plaintiff, contracted for it in reference to its condition in respect to this ditch and its water at the time of the sale, and whether to be deprived of it is to lose something of value and of necessity.
 

 Mor would an affirmative answer to it and a judgment in accordance therewith impose upon the defendant, as is argued, the necessity of keeping up a swamp on his land. The benefits and burdens of this ditch are reciprocal, to be enjoyed and borne by all the lands. As the ditch was to the observation as much an aqueduct from one parcel as an aqueduct to another, so it must continue to be. And the defendant has as good right that it should lead away all the surface water and all that Indian creek brought down, as the plaintiff has that it should be led. So that, as the defendant may not obstruct the ditch to divert the water, the plaintiff may not obstruct it to prevent its flow. And as the plaintiff claims that the defendant may not ditch on his own land and drain away this water in another direction, he must permit him to keep open the ditch on the plaintiff’s land, so that it be effectual for the defendant’s benefit.
 

 It is also urged that the act of the defendant complained of by the plaintiff violated no right of his, for that the ditch the capacity of which he increased, was upon the land of the defendant’s grantor when Mewbold sold to the plaintiff’s grantor. The act which the plaintiff complains of is the diversion of water which when his grantor bought of Mew-bold, was flowing to the land purchased. It matters not how this diversion is effected, whether by digging a new ditch or deepening an old one. The reciprocal rights of the parties (a certain state of facts existing) are to have the status of the tract maintained as it was when Mewbold sold. If water then ran through the ditch which Ayrault has deepened, he may keep a stream there of the same volume it then had, but
 
 *82
 
 may not increase its volume by a diversion of the water which then flowed to the plaintiff’s land.
 

 And we remark here, that we do not mean to conflict with cases cited by the respondent, such as
 
 Arkwright
 
 v.
 
 Gill
 
 (5 M. & Welsby, 203). We think that they will be found to be cases in which the owner of land, having for a time drained the surface water from it in a certain direction, while still the owner of the same tract, and the owner of the whole of it, sees fit to change the direction of the drainage. Though he may have yielded in the first place a benefit to other land by his method, he was not precluded from abandoning it and adopting another, for he had sold none of the land benefited, to one who had contracted for it in reference to its condition of benefit. It was doing with his own as he had a right, the right of no one else having intervened by his act. It was a dominant tenement foregoing the enjoyment of an easement upon a servient one. In the case in hand, both tenements, by the acts of the former owner of both as a whole, have become each dominant and each servient to the other, as their respective needs require. Had there been no drain until the severance of the great tract into parcels, and then the defendant on his parcel had made - drains leading to the plaintiff’s parcel, which stopping afterwards, he had made others elsewhere, and of this the plaintiff had complained, the cases cited would have been in point.
 

 The point is not taken in this court by the respondent, that the complaint of the plaintiff does not put his right of action upon this ground. Hor does it appear to have been taken below. Doubtless, if it had been, the ample power of the court to allow amendments would have obviated the objection without injury to either party.
 

 The judgment of the court below should be reversed, a new trial ordered, with costs to abide the event.
 

 All concur.
 

 Judgment reversed.