WELLS PAINE, Respondent, *v.* JEREMIAH W. CHANDLER, Appellant.

When the owner of land sells and conveys part thereof, he impliedly grants all those apparent and visible easements which at the time of the grant were used by said owner for the benefit of the part granted, and which are necessary for the reasonable use thereof.

This rule is not confined to continuous easements, or to an absolute necessity for the use, but applies to those artificial arrangements which openly exist at the time of the sale and affect materially the value of the estate granted.

The distinction so far as the question of necessity is concerned between cases of implied grants, and of implied reservations pointed out.

*Johnson* v. *Jordan* (43 Mass. 234); *Buss* v. *Dyer* (125 id. 287); *Root* v. *Wadhams* (107 N. Y. 384), distinguished.

Defendant was the owner of two adjoining farms, upon one was a spring, from which pipes had been laid conducting the water to the barnyard on the other, thus furnishing sufficient water for the stock thereon and other domestic uses. Defendant sold and conveyed the farm so supplied to plaintiff by deed which conveyed the land with appurtenances, but made no mention of the spring or the pipes. Defendant thereafter dug a well upon his farm a few feet from the spring, and upon higher ground and from it a ditch running parallel with said pipes; this resulted in lowering the water of the spring below the mouth of the

pipe so as to deprive plaintiff of the use of the water. In an action to restrain such interference with the water of the spring, etc., the court found that the uninterrupted flow of the water was essential to the full enjoyment of the estate conveyed. *Held*, that plaintiff was entitled to the relief sought; that the fact that the diversion was not caused by any direct interference with the waters of the spring was immaterial. *Bliss* v. *Greeley* (45 N. Y. 671), distinguished.

*It seems* the fact that defendant's act was malicious was not material, as unless it interfered with plaintiff's legal rights it was not actionable because done maliciously.

(Argued June 7, 1892; decided October 1, 1892.)

Appeal from judgment of the General Term of the Supreme Court in the fifth judicial department entered upon an order made October 23, 1890, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to compel, and the judgment appealed from directed the restoration to certain water pipes of the waters of a spring on defendant's farm so that it would flow as it had theretofore done to the plaintiff's premises, the complaint also asked and the judgment awarded, damages for the diversion of the water, and in case the waters could not be restored to the spring gave damages for injury to the freehold.

Prior to March 26, 1886, plaintiff owned two contiguous farms in Livingston county which he used and cultivated as one, and which are referred to in the evidence as the " Grimes farm " and the " Paine farm." On March 26, he conveyed both farms to defendant. He was then living on the Paine farm and before removing therefrom, and on April 9, 1886, he repurchased that farm from defendant. In 1867 a pipe had been laid by the then owner of the two farms from a spring on the Grimes farm to the barnyard on the Paine farm and from that time until the date of the conveyance to the plaintiff sufficient water flowed through said pipes to water the stock kept on the Paine farm and also to supply other domestic uses. The deed to the plaintiff from the defendant made no mention of the spring or pipes connected therewith. It described the land and conveyed it with the appurtenances.

About a year after the conveyance the defendant diverted the water from the spring so that it ceased to flow to the Paine farm.

The court found that the uninterrupted flow of water through the pipe as constructed and in use at the time of the conveyance to plaintiff was essential to the full enjoyment of the estate conveyed to him and that the defendant's act in stopping the flow of water was malicious and done with intent to injure the plaintiff.

Other facts appear in the opinion.

*Chas. J. Bissell* for appellant.

*E. A. Nash* for respondent.

BROWN, J.   The judgment in this action rests upon the rule of *Lampman* v. *Milks* (21 N. Y. 505), that when the owner of land sells a part thereof he impliedly grants to the grantee all those apparent and visible easements which are necessary for the reasonable use of the property granted and which are at the time of the grant used by the owner of the entirety for the benefit of the part granted.

The learned counsel for the appellant does not attack the principle, but his contention is that the easement involved in this controversy is of the class known as discontinuous and such an easement passes by implication only when absolutely necessary to the enjoyment of the property conveyed. To use his own language " the rule contended for has been confined to cases where the easement claimed was something without the use of which the premises would be practically worthless." The rule is not confined in its application to continuous easements, but applies to those artificial arrangements which openly exist and effect materially the value of the respective parts of the estate at the time of the sale. (*Lampman* v. *Milks, supra; Curtiss* v. *Ayrault,* 47 N. Y. 73–79.)

To support his argument upon the claim of absolute necessity the appellant in part relies upon Massachusetts cases. It was said in the opinion in *Buss* v. *Dyer,* (125 Mass. 287),

that if an easement existed by implication it was because it was absolutely necessary to the enjoyment of the·estate.

But that remark was not necessary to the decision as the verdict of the jury was in the defendant's favor under a charge that there was no easement unless there was a reasonable necessity therefor. The learned judge who delivered the opinion in that case conceded that his statement of the rule was in conflict with the decision of the courts of England and of this state. In this state the rule of strict necessity is applied to implied reservations but not to implied grants. In the recent case of *Wells* v. *Garbutt* (132 N. Y. 430), it was said : " As a grantor cannot derogate from his own grant while a grantee may take the language of the deed most strongly in his favor the law will imply an easement in favor of a grantee more readily than it will in favor of a grantor."

This distinction between implied reservation and implied grants there pointed out is well founded in the law, although in some of the reported cases it has apparently been overlooked. In *Johnson* v. *Jordon* (43 Mass. 234), Chief Justice SHAW, after stating the rules applicable to the construction of a grant, said " if a man owning two tenements has built a house on one and annexed thereto a drain through the other, if he sell and convey the house with the appurtenances, such a drain may be construed to be *de facto* annexed as an appurtenance and pass with it, because such a construction would be most beneficial to the grantee, whereas if he were to sell and convey the lower tenement, still owning the upper, it might reasonably be considered that as the right of drainage was not reserved in terms it could not be claimed by the grantor. The grantee of the lower tenement, taking the language of the deed most strongly in his own favor and against the grantor, might reasonably claim to hold his granted estate free of the incumbrance." (See also *Wheeldon* v. *Burrows*, L. R. [12 Ch. Div.] 31, 49 ; Washburn on Easements [4th ed.], pp. 105–106 ; *Burr* v. *Mills*, 21 Wend. 290.)

In *Johnson* v. *Jordon* (*supra*), to which appellant refers, the conveyances of the dominant and servient tenements were

simultaneous and the right to the easement was denied upon a construction given to the deeds and the circumstance attending their delivery.

In *Buss* v. *Dyer* (125 Mass. 287), the chimney in which an easement was claimed had worn out and had been taken down, and the jury found as a fact that the plaintiff at a reasonable cost could have built one on his own property, and the facts of the case amply justify the decision without reference to the rule of strict necessity.

Undoubtedly an easement to pass by implication must be necessary to the enjoyment of the estate granted, but the necessity required is a reasonable not an absolute one. Mere convenience would not be sufficient to create or convey the right.

The privilege or right implied must be of value to the estate granted which the grantee has estimated as an advantage to the estate and paid for in his purchase.

In *Curtiss* v. *Ayrault* (47 N. Y. 73), the essential question of fact there involved was stated to be whether the grantor of the plaintiff in arriving at the price he would pay considered and had a right to consider as an element of value of the land he was buying the ditch across the tract giving the supply of water through it. (See also *Simmons* v. *Cloonan*, 81 N. Y. 557–566; *O'Rorke* v. *Smith*, 11 R. I. 259; Washburn on Easements [4th ed.], pp. 110–111.)

*Root* v. *Wadhams* (107 N. Y. 384), cited by the appellant, was distinguished by the court in its facts from *Lampman* v. *Milks* and kindred cases, and nothing need be added to what was there said on this subject.

The trial court in this case found as a fact that the uninterrupted flow and use of the water through the pipes from the spring on the Grimes farm was essential to the enjoyment of the estate conveyed to the plaintiff, and this finding has ample support in the evidence. After the water was cut off plaintiff dug a well upon his premises and failed to procure sufficient water for his stock and he was under the necessity of driving them considerable distances down a hill to a stream in order to

water them. The court further found that the loss of the flow of water in the barnyard impaired the rental value of the farm fifty dollars a year and depreciated the fee value six dollars per acre, and it is apparent, therefore, that the use of the water was a substantial and valuable right and not a mere convenience.

The facts, therefore, justified the court in holding that the plaintiff took under his deed by implication a right to the use of the waters of the spring.

It appeared that the diversion complained of was not caused by any direct interference with the waters in the spring, but that the defendant, upon his own land and upon ground higher than the spring, and a few feet therefrom, dug a well, and from it a ditch extending north about twelve rods, parallel with the pipes leading to the Paine farm and about ten feet therefrom.

That, as a result of this act, the body of the water in the spring was diminished and fell below the mouth of the pipe leading to the Paine farm, and the court found that this was done maliciously and with the purpose of depriving the plaintiff of the use of the water.

The fact that the defendant's act was with malice towards plaintiff is of no importance in determining its legal character. Unless it interfered with a legal right of the plaintiff, it was not actionable because done maliciously. A person may do what he pleases upon his own land, and so long as he violates no legal duty that he owes to his neighbor, he is not liable, although he may perform the act for the sole purpose of injuring his neighbor. The question presented, therefore, is was the act of intercepting the flow of water to the spring an interference with the rights of the plaintiff acquired under his deed?

The appellant contends it was not and cites us to *Bliss* v. *Greeley* (45 N. Y. 671). In that case the plaintiff had acquired by deed the right to use a spring of water upon defendant's property and to carry the same through a pipe to his house on adjoining land. The defendant, by excavation on his farm a short distance from the spring, intercepted the flow of water

thereto and plaintiff's right was destroyed. The court held that the plaintiff's rights were no greater than if he had owned the fee of the land in which was the spring, and, upon principle of law applicable to adjoining lands when neither one has any easement or right in the land of the other, held that the plaintiff could not recover.

In *Johnstown Cheese Manufacturing Co.* v. *Veghte* (69 N. Y. 16), *Bliss* v. *Greeley* was distinguished from the case then before the court, and because in the latter case there was a grant of the use of the water which at the time of the grant was being conducted to the spring, and the intent of the parties was to secure a continuance of that supply as a thing necessary to the operation of the cheese factory, the defendant was restrained from digging on his land and intercepting the flow of water to the spring from which plaintiff's supply was drawn.

In this case the rights of the parties under the implied grant of the use of the water, are to be determined by a consideration of the circumstances surrounding it, the situation of the respective farms with reference to it, with a view to ascertain the true intent of the parties.

The general rule is that a man, who owns land subject to an easement, has a right to use his land in any way not inconsistent with the easement, and the extent of the easement is to be determined by a true construction of the grant creating it, aided by such circumstances surrounding the estate and parties as have a legitimate tendency to show the intention of the parties. (*Onthank* v. *L. S. & M. S. R. R. Co.*, 71 N. Y. 194.)

Under this rule, the rights of the owner of the easement are paramount to the extent of his grant. There is no joint use of land contemplated in the sense that the rights of the grantee of the easement must, under certain circumstances, give way to those of the grantor.

The intent of the parties, under the implied grant to the plaintiff, was that plaintiff should have the use of the water in his farmyard as a thing not only beneficial to the estate pur-

chased by him, but necessary to the full enjoyment thereof. If deprived of that use, he loses that which was an open and visible appurtenance to his property, and which represented a part of the consideration for which he paid the purchase-price to the defendant. By the acts of the former owner, the defendant's land became servient to the plaintiff's to such extent as was apparent at the time of the conveyance to the plaintiff. And plaintiff's legal right was that the water should continue to flow to his barnyard as it flowed when he acquired his title.

Any act of defendant's which impaired that right was actionable. Defendant could not lawfully by direct means lower the water in the spring below the pipe leading to plaintiff's property, nor could he lawfully divert the water from the spring and thus deprive plaintiff of its use. Such acts would be in violation of his implied contract and actionable. Substantially this same question was raised in *Curtiss* v. *Ayrault* (p. 81) and *Simmons* v. *Cloonan* (p. 566, *supra*).

In the first case, in discussing the point that defendant's acts, being upon his own lands, were not in violation of plaintiff's rights, it was said: "It matters not how the diversion is effected, whether by digging a new ditch or deepening an old one, the reciprocal rights of the parties are to have the status of the tract maintained as it was when Newbold sold."

The full enjoyment of the property purchased by the plaintiff was the thing contemplated by the parties. This could not be had if the flow of water was stopped. That the defendant could do this without incurring any liability would be destructive of the contract implied in his deed, and reduce the grant to a mere license revocable at his will.

We are of the opinion that the defendant's acts were clearly an interference with the legal rights of the plaintiff and were actionable.

The judgment must be affirmed.

All concur.

Judgment affirmed.