(23 Misc. Rep. 385.)

### WHYTE et al. v. BUILDERS' LEAGUE OF NEW YORK.

(Supreme Court, Special Term, New York County. April, 1898.)

1. EASEMENTS—BUILDING ON DIVISION LINE.

   Plaintiff and defendant respectively owned adjoining lots, obtained from the same original source of title, on which there were three houses, the middle one of which was about half on one side and half on the other side of the division line. A common sewer ran along the division line. The water pipe for the middle house passed through defendant's land, and the chimney was substantially on the line. *Held*, that defendant had a right, where the house had been cut through on the division line, to remove his half, since the use of the building was not a common servitude for both lots, and the user of the water pipes, etc., fell with a separation of the estate in the middle house.

2. DEEDS—APPURTENANCES.

   The term "appurtenances" means only incorporeal easements which are necessary to the proper enjoyment of the estate granted.

Action by James R. Whyte and others against the Builders' League of New York to compel restoration of half of a building, and for damages for its removal. Dismissed.

Charles D. Ridgway, for plaintiffs.
Dulon & Roe, for defendant.

RUSSELL, J. The plaintiffs seek to compel the restoration of the easterly half of a building formerly standing on two lots on the south side of 126th street, in the city of New York, and damages occasioned by the removal of this easterly half. The common source of title of the parties was Andrew Crawford, who died in the year 1872. Prior

to his death, and while he was the owner of the two lots, with two others on the north side of 125th street, he erected five three-story frame buildings, two fronting on 126th street,—one of them on the lot a life estate in which is now owned by the plaintiffs, the other on the lot which is now owned by the defendant in fee,—and the other three buildings in the rear of the two lots, the middle building covering about eight feet of the plaintiff's lot and eight feet of the defendant's lot; all three being covered by the same roof, with studding partitions separating the middle building from the two others. A common sewer ran along the dividing line of the two lots. This middle building is the one in controversy. In 1880, by conveyances between the heirs, the westerly lot was deeded to Jessie Whyte, the mother of the plaintiffs, upon whose death, in 1893, the plaintiffs received their title; and the easterly lot was conveyed to Barbara Ewan, from whom the defendant received its title. Up to a short time prior to the deed to the defendant of the easterly lot, which was July 7, 1897, the owners of the two lots by common consent rented the middle house, covering parts of the two lots, to tenants, and divided by amicable arrangement the rentals received. The entrance to the middle house was east of the dividing line between the two lots, and the water supply for the middle house came through the street pipe passing through the easterly lot. The chimney for the middle house was built substantially on the line between the two lots. Prior to the receipt of the defendant's deed, it had notice that the plaintiffs claimed rights in the easterly half of the middle house, and a right of access over the defendant's lot thereto. On the day that the defendant received its deed, this middle house had been sawn through on the line between the two lots; and thereafter it removed such separated half, and proceeded to erect a structure of more enduring character, destroying the sewer connection and the water supply to the west half of the middle house, but leaving sufficient room to enable the plaintiffs to close the opening left by such severance in the house; and thereafter the plaintiffs arranged their half of the house so that it could be used with the westerly house standing on their lot.

The question now arises whether the defendant had a right to remove all obstructions upon its own lot, and utilize it for its own purposes, or whether the free title apparently conveyed to it was really incumbered by operation of law so that the defendant was obliged to permit the frame building to stand until it crumbled down, or was destroyed by the elements; thus impairing the available use of its own property in a section of the city, the lots in which were rapidly increasing in value. The chimney, sewer, and water pipe were servient to the middle house, and incidental to its use, and their user fell with the separation of the estate in the middle house. They were not essential to the westerly house, and therefore were mere incidents to the use of the middle house, so long as the right of user of that middle house existed in common to both parties. The plaintiffs claim that the deed to their mother, given at the same time as the deed to the defendant's grantor, conveyed all of the appurtenances to the lot; each of these conveyances describing the lands conveyed,

and separating them by the division line between the two lots.    The defendant claims that each of the grantees in the partition deeds obtained a free and untrammeled title to the lands described, and all of the structures erected thereon.    It is a well-known rule that, where the owner conveys part of lands owned by him, he impliedly grants all apparent easements used by the owner for the benefit of the part granted, and necessary to its reasonable use, such as water supply from a spring (Paine v. Chandler, 134 N. Y. 385, 32 N. E. 18); a beam right in a party wall (Rogers v. Sinsheimer, 50 N. Y. 646); the right to use the water of a reservoir for the benefit of a mill (Simmons v. Cloonan, 81 N. Y. 557); a drain which has become a permanent channel, and in which flows a continuous stream (Curtiss v. Ayrault, 47 N. Y. 73).    But the servitude must be apparent.    Butterworth v. Crawford, 46 N. Y. 349.    No case has been found which declares the use of a building erected on two adjoining lots to be a common servitude for both.    The division of the title in this case separated the interest which was theretofore common to the owners, by their own act, into a single interest as to each half, to be disposed of at pleasure.    Had the defendant's grantor proceeded to remove her part of the frame building at once, she might have done so. She was not obliged to retain an eight-foot structure upon her lot to serve simply as a weather protection for the other half of a frame structure.    A contrary rule would largely destroy the value of the property received by an incubus which had never been imposed upon it by any agreement.    The term "appurtenances" conveys only incorporeal easements, or rights or privileges which are necessary to the proper enjoyment of the estate granted.    Griffiths v. Morrison, 106 N. Y. 165, 12 N. E. 580.    This view is fortified by the terms of the partition deeds.    The conveyances were expressly made subject to the agreement of any tenant or tenants then occupying the premises or any part thereof.    The intelligent mention of this reservation shows that the parties understood the separation of the title to each lot to be complete, and guarded against the disturbance of possession for any tenant until his tenancy had terminated.    No such reservation was essential, if each half of the middle house was appurtenant to the lot on which the other half rested.    The use, for rental purposes, of the middle house by the owners in common, up to near the time the defendant received its deed, was for convenience and facility of renting.    Such an arrangement could be terminated at will, subject to the contracts made with third parties.    No servitude was thus imposed upon the title to the premises.    Judgment is directed dismissing the complaint, with costs.

Complaint dismissed, with costs.