772

John Morrison, Plaintiff, *v.* Emanuel Fellman and Another, Defendants.

Supreme Court, Bronx County, March 15, 1934.

*Florence Sullivan,* for the plaintiff.

*Monroe Percy Bloch* [*Milton Adler* of counsel], for the defendant.

McLaughlin, J.    This action is brought by the plaintiff against the defendant Jacob Keur for an injunction to prevent the defendant from interfering with an easement running from his property to Riverdale avenue, Bronx county.    The plaintiff has been using

this way as one of ingress and egress from his home to the outer world for over fifty years. The defendant contests its exact location during that time, but nobody can gainsay the fact that the plaintiff and his family have used it as such.

Originally all the property affected by this controversy was owned by Joseph Rosenthal, who filed a map to all this property on December 20, 1886. Previous to that time the plaintiff and before him, his father, were the tenants of Mr. Rosenthal. Riverdale at this point in 1886 was a rather rough country, and prior to the filing of the map by Mr. Rosenthal the *only* way used by this plaintiff and others of his family was a strip of land which he claims was eleven feet in width and running from his property to Riverdale avenue.

The plaintiff contends that there was a verbal grant of this eleven feet by Mr. Rosenthal as an easement in perpetuity for his benefit and for those similarly situated who might buy from Mr. Rosenthal.

The defendant claims title to the same eleven feet as part of lot 18 and alleged to be included in deed to lot 18 to the defendant. This contention would make this lot extend sixty-one feet on Riverdale avenue.

Plaintiff testified that when Mr. Rosenthal sold him the property in 1887, the latter stated that he would not put the easement in his deed because he wanted the others to have similar rights, but that the eleven feet would show on the map. The deed to plaintiff is dated March 28, 1887, and is from Joseph Auerbach and Hattie, his wife. The former was the son-in-law of Joseph Rosenthal and this is the deed that plaintiff obtained from Joseph Rosenthal who sold the property to the plaintiff after he had been plaintiff's landlord for several years. At this point it might be said that assuming that the owner was in reality Mr. Auerbach, nevertheless he would be bound by any parol agreement made by Mr. Rosenthal at the time the sale was made and consummated. He negotiated everything in connection with the sale to plaintiff. Mr. Auerbach accepted the consideration and is, therefore, bound by whatever agreement Rosenthal made at the sale. (*Phillips* v. *West Rockaway Land Co.*, 226 N. Y. 507; *Ashley* v. *Ashley*, 4 Gray, 197; *Valentine* v. *Schreiber*, 3 App. Div. 235.) However, though the record showed title in Mr. Auerbach it is plain that the real owner was Mr. Rosenthal.

Both these parties bought their property according to the lot numbers on the Rosenthal map. As I look at this map, lot 18 is just the same size as lot 19, which on subsequent surveys is fifty by one hundred. Where did this eleven feet additional come from? This doubt is strongly corroborative of the plaintiff's testimony,

which deeply impressed the court as truthful and without guile of any kind. He said: "By the court: Q. Go ahead and tell us. A. Your Honor, when I bought this property from Rosenthal he had sold the whole hill at auction, lots and plots. Q. When was that? A. That was I should judge 48 years ago or 49 years ago. Q. Go ahead. A. So, he come along of a Sunday. He used to come of a Sunday to collect his rent, and he said to me, ' John, why didn't you buy some of this property?' I said, ' Mr. Rosenthal, I couldn't buy any of this property.' He said, ' Why?' ' Why,' I said, ' I haven't money to buy it.' I was rearing a big family at the time and at the same time I was glad to get a shack to live in. That was another thing. Riverdale wasn't like it is today. ' Very well,' he said, ' Why don't you buy this?' He said, ' There are three city lots here and this house,' and he says, ' why don't you buy it?' ' It will be a nice home for you, a small family.' ' Well,' I said, ' Mr. Rosenthal, I couldn't buy it.' ' Oh,' he said, ' you can. I will be easy with you,' and all like this. Now, this is true; I am telling the truth, remember this. So, he says, ' you better buy it.' ' Well,' I said, ' what do you want for it?' ' Well,' he says, ' I will sell it to you for a thousand dollars.' A thousand dollars in them days was money, you know. So, he says, ' You can have it for that.' ' Well,' I says, ' I couldn't give you that much.' I says, ' I will tell you what I will do with you, Mr. Rosenthal, I will give you six hundred dollars for it.' ' Oh,' he said, ' no, no.' ' Well,' I said, ' that is all I will give.' So, anyhow I got it for six hundred dollars from him. ' Now,' I said, ' about this — how am I going to get down here? Is this eleven feet going to be here for a right of way as usual?' He said, ' Sure.' I said, ' What is the matter with you giving me that in the deed?' ' Well,' he said, ' I couldn't do that because if I gave you that in your deed you would own the right of way. You wouldn't allow anybody else to use it. Now,' he said, ' I will leave that eleven feet there for anyone that wants to come up here on the hill and build here alongside of you.' So, I was using the eleven feet then for a right of way because I couldn't get up or down to Riverdale Avenue. There was no way of getting in or out only through that eleven feet, and I have been using that ever since."

A high fence was placed across the right of way by the defendant, and the plaintiff, in order to leave his property and get to it, claims that he has to use other people's property.

It appears that Mr. Rosenthal made all these lots the same size and deliberately left out this eleven feet which was used by the Morrison family as the right of way for years and which he intended that the other lots similarly situated should likewise use. These

are the facts and the inferences from them that the court finds. Do they under the law give the plaintiff an easement over this eleven feet as a right of way? I realize that the question of the title of the defendant to this strip of property is not directly involved. It would appear, however, that there is no basis for this claim of title in the Rosenthal map. I am not determining that, however, because it is not an issue in this action. The issue is, assuming that the defendant has in reality legal title to this strip, is it then subject to this right of way easement?

The parol agreement between Joseph Rosenthal, either for himself or as agent for Auerbach, and the plaintiff, for this right of way is void under the statute, but user and this parol grant together create the easement. " User under a parol grant of an easement, void under the statute, is adverse, since exercised under a claim of right in the person enjoying the user. The easement is enjoyed as his own by virtue of a grant to him, not as a license subject to be revoked at any time." (Walsh, The Law of Property, p. 628, § 293; 1 Thompson Real Prop. § 319; Jones Easements, § 182; 9 R. C. L. § 37, p. 778.) A void grant may form the basis of an adverse use and enjoyment of an easement in land. In *Miller* v. *Garlock* (8 Barb. 153) the court said (at p. 156): " A deed not only defective but void on its face, may form a good basis of an adverse possession of land (*Humbert* v. *Trinity Church*, 24 Wend. 611; *La Frombois* v. *Jackson*, 8 Cowen, 589). In analogy to this rule of law, a void proceeding laying out a private road, or a void grant, may form the basis of an adverse use and enjoyment of an easement in land. The use of the easement, in this case, by the defendant, the law will regard as adverse to the plaintiff, and as under a claim of right, to the extent of its use, as it was with the knowledge and acquiescence of the plaintiff, and as there is no evidence to show that the road was used by the defendant, by the mere indulgence of the plaintiff, or otherwise than under an assertion of right. (3 Kent's Com. 443, 444; 9 Pick. 251; 2 Hil. Abr. 60, 61; 3 East, 297.) "

This principle is clearly recognized in *La Frombois* v. *Jackson* (8 Cow. 589), where the court (at pp. 596, 597) states: " If the entry is under color of title, the possession will be adverse, however groundless the supposed title may be. The fact of possession and its character, or the *quo animo* of the possessor, are the test." (*Briggs* v. *Prosser*, 14 Wend. 227; *Jackson* v. *Moore*, 13 Johns. 513.)

This doctrine has been enunciated in the leading case of *Ashley* v. *Ashley* (*supra*). Recognized textbook writers like Washburn in his book on " Easements & Servitudes," at page 154, give the credit of this principle to this case. The doctrine, however, was recognized by a series of authorities long before this, some of which

are set forth in this opinion. The rule in *Ashley* v. *Ashley* (*supra*) has been followed in other jurisdictions (*Arbuckle* v. *Ward*, 29 Vt. 43, 52; *Jewett* v. *Hussey*, 70 Me. 433; *Legg* v. *Horn*, 45 Conn. 409; *Taylor* v. *Gerrish*, 59 N. H. 569).

In the case of *Ashley* v. *Ashley* (*supra*, at p. 199) the court said: " The plaintiff, in order to establish the right of way, alleged in his declaration to have been disturbed by the stopping of the drain or watercourse, relied on a parol reservation made by his mother, at the time of selling the land, under a license of court, as administratrix of her husband, for the payment of debts; and offered to show that when the deed was made by the administratrix to the defendant, there being no way reserved, the defendant assured her or her agent that she should have a right of way for the use of her lot, now held by the plaintiff, as if it were reserved. The judge had ruled that, by force and effect of the deed given by the administratrix to the defendant, he had the land free from any servitude in favor of the upper lot, or any right to a watercourse over that of the defendant; and that, if such servitude existed at all, it had arisen since that time, by adverse use and enjoyment for the term of twenty years. Upon this point, the evidence offered by the plaintiff was, that when the agent of the administratrix delivered to the defendant the deed, he stated that it reserved no right of way to her own lot, and that the defendant then said she might pass over the land as much as she pleased, as much as if the right of way was in the deed.

" Here the question was whether the right of way could be established by twenty years' adverse, continued and uninterrupted enjoyment. The judge, against the objection of the defendant, held that this evidence was competent, not because a right of way can be created by a parol grant, but to show that the plaintiff commenced the actual use of the way under a claim of right. The court are of opinion that this was correct, for the purpose and to the extent, to which it was limited. The evidence had a tendency to show that the plaintiff used the way openly as of right, against the owner of the soil, and so was adverse, and this was one of the elements for establishing an easement by prescription. It was within the principle of *Barker* v. *Salmon*, 2 Met. 32; *Brown* v. *King*, 5 Met. 173; and *Sumner* v. *Stevens*, 6 Met. 337. This principle is, that possession under a claim of title, with or without deed, is adverse; and that principle applies as well in case of easements, incorporeal hereditaments, and interests in land, as to the title to land itself."

The case of *Wiseman* v. *Lucksinger* (84 N. Y. 31) clearly recognizes the principle set forth in the foregoing authorities, but stated that

in that case there was no contract for a deed or any engagement to confer a title. The opinion clearly distinguishes that case from the case at bar. At page 47 it is stated: " As I have above undertaken to show, the possession of the plaintiff here was under no claim of right, and was entirely consistent with the defendant's title." In the instant case the contrary appears. If the entry is under color of title, the possession will be adverse however groundless the supposed title may be. (*La Frombois* v. *Jackson*, 8 Cow. 589.)

A contract for the purchase of land after performance, by the vendee of the terms of the contract, and the accruing of a right to a deed is sufficient color of title whereon to base the defense of adverse possession in an action by the vendor for the recovery of the premises. (*Briggs* v. *Prosser*, 14 Wend. 227.) In the case of *Belotti* v. *Bickhardt* (228 N. Y. 296, at p. 302) it is stated: " Adverse possession, even when held by a mistake or through inadvertence, may ripen into a prescriptive right after twenty years of such possession." (*Dempsey* v. *Kipp*, 61 N. Y. 462, at p. 471.)

In this case there is no question that the defendant and his privies are estopped from questioning this easement in the eleven-foot strip. The testimony is uncontradicted that it was used for a right of way for upwards of fifty years. At the time the plaintiff was requested to buy by the predecessor of the title to both plaintiff's and defendant's property, this right of way had already existed and was appurtenant to the premises, as it was the only way of access used by the plaintiff to and from his property. Both the plaintiff and his father used it exclusively, as the only way to and from their home, prior to the conveyance to the plaintiff and at a time when the plaintiff and his father were tenants of this very property. It is, therefore, to be expected that in buying the property the plaintiff did not bargain to get a less exclusive right to enjoy the premises than he had before the sale.

In *Curtiss* v. *Ayrault* (47 N. Y. 73, at pp. 79, 80) it is stated: " The question whether the purchasers from Newbold contracted with him, and bought these lands in reference to their condition at the time of sale, depends as well upon what was their purpose and understanding, and what from the physical view of the land, might be inferred to be the effect upon them in their estimate of their advantages and value with this artificial stream of water led through the different parts of it. And the question for decision at the trial was: Considering all the facts established by the testimony, and all the inferences properly to be made from it, and all the presumptions properly to be indulged, did the grantor of the plaintiff, in arriving at the price he would pay, consider and have a right to consider, as an element of the value of the land he was bidding for, this ditch

across the tract giving this supply of water through it? Now there is testimony tending to an affirmative answer; and in our judgment, it was not a correct disposition of the case to take it from the consideration of the jury, and to direct to them their verdict in the negative." (*Ringwald* v. *Sadlowski*, 237 App. Div. 59.)

Subsequent to acquiring of title by the plaintiff to his property, he and his family have openly continued to assert this right to use this way as the passage to and from his property to Riverdale avenue. The defendant and his privies have acquiesced in this all during the years from 1887 and prior thereto until 1930, when this fence was erected. Such a condition creates an estoppel and makes valid the plaintiff's claim to an easement. (*Miller* v. *Garlock, supra*, 156.)

In *Brown* v. *Bowen* (30 N. Y. 519, at p. 541) it is stated: " To establish an estoppel *in pais*, it must be shown: 1st. That the person sought to be estopped, has made an admission or done an act, with the intention of influencing the conduct of another, or that he had reason to believe would influence his conduct, inconsistent with the evidence he proposed to give, or the title he proposes to set up. 2nd. That the other party has acted upon, or been influenced by such act or declaration. 3rd. That the party will be prejudiced by allowing the truth of the admission to be disproved. * * *

" It would seem that the attention of neither court nor counsel was drawn on the trial to the important estoppel that was proved in the case. Which was, the omission by the defendants and their ancestor to assert title to the premises in question, although knowing the premises to belong to them, and that the plaintiffs, or one of them, had purchased them, and was making valuable permanent. improvements thereon, in the belief that they, and not the defend-. ants or their father owned them. That this silence — this omission to assert title — constitutes an estoppel, there can be no dispute." (*Corning* v. *Gould,* 16 Wend. 531, 543.)

Moreover, it is my opinion that this parol grant was given because of a practical necessity and the evidence clearly shows that this situation existed at the time the conveyance was made to the plaintiff.

The tendency in modern times (at least in England) seems to be to decide these matters in a practical and equitable manner. The entire picture presented is the guide for the court to follow. The word " appurtenances " is given the same meaning and is held to carry with it rights of way then existing and which are practically necessary to give usable enjoyment to the premises. So too is the rule in this State. (*Paine* v. *Chandler,* 134 N. Y. 385, at pp. 388, 389.)

" The learned judge who delivered the opinion in that case conceded that his statement of the rule was in conflict with the decision of the courts of England and of this state. In this state the rule of strict necessity is applied to implied reservations but not to implied grants. * * *

" Undoubtedly an easement to pass by implication must be necessary to the enjoyment of the estate granted, but the necessity required is a reasonable not an absolute one. Mere convenience would not be sufficient to create or convey the right.

" The privilege or right implied must be of value to the estate granted which the grantee has estimated as an advantage to the estate and paid for in his purchase." (*Goldstein* v. *Hunter*, 257 N. Y. 401.)

In *Hansford* v. *Jago* ([1921] 1 Ch. 322) the court said (at p. 331): " I prefer to follow that decision, and I hold therefore that the word ' appurtenances ' in these conveyances was apt to include and did include this privilege or right which was being enjoyed by the existing tenants at the date of the sale."

In *Watts* v. *Kelson* ([1871] 6 Ch. App. 166, at p. 174) it is stated: " According to the rule, as laid down by Chief Justice ERLE, the right to such an easement as the one in question would pass by implication of law without any words of grant, and we think that this is the correct rule; but if words of grant are necessary, we also think that the general words in this case are amply sufficient to pass the easement. It was a watercourse with the premises at the time of the conveyance used and enjoyed. We may also observe that, in *Langley* v. *Hammond* (L. R. 3 Exch. 161), Baron BRAM-WELL expressed an opinion, in which we concur, that even in the case of a right of way, if there was a formed road made over the alleged servient tenement, to and for the apparent use of the dominant tenement, a right of way over such road might pass by a conveyance of the dominant tenement with the ordinary general words."

There is further authority for this proposition in this State. In *Huttemeier* v. *Albro* (18 N. Y. 48, at pp. 51, 52) the court states: " It is a general rule that, upon a conveyance of land, whatever is in use for it, as an incident or appurtenance, passes with it. The law gives such a construction to the conveyance, in view of what is thus used for the land as an incident or appurtenance, that the latter is included in it. Whether a right of way or other easement is embraced in a deed, is always a question of construction of the deed, having reference to its terms and the practical incidents belonging to the grantor of the land at the time of the conveyance. The intention of the parties is to be learned from those facts."

" It is settled by the decisions of this court, that it is enough that the possessor be in under a claim of title to clothe it with the character of an adverse holding, and to give it efficacy as a defense, when of sufficient age to be a bar; and that an invalid or defective title, if believed to be good, will be equally operative with a valid one in giving effect to a possession taken and held under it." (*Clapp* v. *Bromagham*, 9 Cow. 530, 557.)

There may be a way of necessity based upon the convenient user of the property. An implied grant may exist as being in the nature of a continuous and apparent easement. (*Paine* v. *Chandler, supra; Brown* v. *Alabaster*, 37 Ch. Div. 490.)

This is a case where the plaintiff had a clear right to an easement.

" An easement is a right without profit, created by grant or pre-scription, which the owner of one estate may exercise in or over the estate of another for the benefit of the former. * * *

" A license is a personal, revocable and non-assignable privilege, conferred either by writing or parol, to do one or more acts upon land without possessing any interest therein." (*G. L. & P. J. R. R. Co.* v. *N. Y. & G. L. R. R. Co.*, 134 N. Y. 435, 439, 440.)

The plaintiff's right came within this definition of an easement. It was made by a parol grant. It was without profit. It was not personal, because not only was it to cover this land of the plaintiff and the successors in interest of the plaintiff, but also the land of the owners of the other lots which were similarly situated. Its nature indicates that it was to be permanent, for it appears that the parties intended that this should be the way of ingress and egress from plaintiff's property to Riverdale avenue, and that it was to serve other lots in the same manner.

That this right of way has been used openly and notoriously for more than fifty years may not be disputed. That the defendant did not take title until September 9, 1927, may not be questioned. That for over twenty years the entire width of eleven feet was used by wagons and pedestrians is borne out by the evidence. The claim to this right of way has been asserted by the plaintiff since 1887 and he has persisted in this claim adversely to all the world and in particular to this defendant and his privies in interest. Certainly the original parol grant and such user make the right to this easement complete.

That a part of the steps placed on this right of way by the plaintiff was destroyed in 1925 is immaterial. The defendant may not take advantage of the wrong done by a third party. If a portion of the steps was actually destroyed, that may not affect the plaintiff's rights. His claim was complete long before 1925 and at best it could only relieve the defendant of about two feet at the very end

corner of its lot. (*Haight* v. *Littlefield*, 147 N. Y. 338; *Rupprecht* v. *St. Mary's R. C. C. Soc.*, 131 App. Div. 564; affd., 198 N. Y. 576.)

It is, therefore, evident that the contentions of the defendant, that neither a grant nor a right of adverse user resulted, must fall. This easement was created as a result of a parol grant coupled with user of the right of way for a period of over twenty years. The grant was made in connection with the purchase of property and the delivery of a deed to the same.

I am satisfied that the weight of credible testimony lies with the plaintiff as to the width of the right of way being the width of eleven feet and extending from the Morrison house to Riverdale avenue, the only legally open street to which the Morrison house is accessible.

Mr. Keur became owner by deed executed September 9, 1927. The description of the property conveyed to him therein and the title policy thereon both refer to the Rosenthal map, which does not show ownership of the additional eleven feet in Keur. There is nothing, therefore, in these documents which adds any value to the defendant's story. On the contrary, the opposite is to be learned, namely, that lot 18 fronts fifty feet on Riverdale avenue instead of sixty-one and seven one-hundredths feet as claimed. In conclusion, the map that governs here is the Rosenthal map, where all the lots are equal in width, and not the Title Guarantee and Trust Company maps of subsequent date. It is plain that there have been added arbitrarily eleven feet to lot 18 on the Rosenthal map. Why was it not added to lot 19? There is no answer except to say that this easement existed and that the survey of Title Guarantee and Trust Company shows it erroneously added to lot 18. Aside from this, it is clear that this easement exists. Judgment for the plaintiff. Counterclaims of the defendants dismissed. Submit findings of fact and conclusions of law and judgment accordingly on notice.