CATHERINE A. HENNESSY, Appellant, v. ARCHIBALD R. MURDOCK, Respondent.

One S., being the owner of an entire square in a city, caused it to be divided into lots and a map made thereof, which was filed in the county clerk's office. A lane or alley was laid out running through the square upon which all the lots abutted. S. conveyed to defendant a lot, describing it as bounded on the alley, as marked on the map, and concluding as follows: "Together with the right of way of the alley aforesaid, which is forever to be kept open for the use and benefit of the lots to which it is adjacent; said alley being one rod wide  *  *  *  as laid down on the map before mentioned." S. thereafter conveyed the lot on the opposite side of the alley to H., describing it as numbered and marked upon the map and as bounded on the alley. A part of said lot was subsequently conveyed to plaintiff. Defendant built a fence across the alley. In an action of trespass, *held*, that under the deeds from S. the grantees took title to the center of the alley, subject to an easement or common right of passage of the lot owners.

In the deed from H. of the part of lot now owned by plaintiff, the land conveyed was described by metes and bounds, one line running along the alley, which, however, was not referred to in the deed. *Held*, that the deed conveyed the fee of one-half the alley; and that defendant was liable.

As between the grantor and grantee, the conveyance of a lot bounded on a street in a city carries the land to the center of the street, and this, although the deed contains no reference to the street, but the lot is described by numbers as represented upon a map whereon it appears as abutting on the street, and the bounds as given do not include any part of the street.

Where an abandonment of an easement is relied upon as a defense to an action for interference, there must be clear and convincing proof of an intention of the owner to abandon it as such; mere proof of non-user is not sufficient.

(Argued February 6, 1893; decided February 28, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made January 22, 1892, which denied a motion for a new trial and ordered judgment in favor of defendant on a nonsuit granted at Circuit.

This was an action of trespass, alleged to have been committed by defendant by building a fence upon plaintiff's premises and thereby closing a lane between the lands owned by the plaintiff and defendant.

The facts, so far as material, are stated in the opinion.

*John D. Teller* for appellant. The conveyance of lot No. 16 from James T. Smith to Nathaniel Garrow, which bounds the lot by the alley or lane in question, and refers to the map on file, made by Lewis Clark, which shows the lot as abutting upon the lane, embraced the land to the center of the lane, although the width of the lot, as stated, would not include any part of it. (*Child* v. *Starr*, 4 Den. 369 ; *Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y. 61 ; *Perrin* v. *N. Y. C. R. R. Co.*, 36 id. 120 ; *In re Ladue*, 118 id. 220 ; *Haberman* v. *Baker*, 128 id. 259 ; *City of Buffalo* v. *Pratt*, 131 id. 298 ; *Sizer* v. *Devereux*, 16 Barb. 160 ; *Varick* v. *Smith*, 9 Paige, 553 ; *Wallace* v. *Fee*, 50 N. Y. 694 ; *White's Bank* v. *Nichols*, 64 id. 65 ; *Mott* v. *Mott*, 68 id. 246 ; *Jackson* v. *Hathaway*, 15 Johns. 447.) Where an owner of land lays it out into village lots, intersected by streets and avenues, and sells lots by reference to a map, which he has made and filed, on which such streets are delineated, the streets on the map become an easement annexed to the estate granted. The right thus created becomes appurtenant to the land conveyed, and passes with it under subsequent conveyances, though not expressly referred to. (*Potter* v. *Iselin*, 31 Hun, 134 ; *Taylor* v. *Hopper*, 62 N. Y. 649 ; 2 Hun, 646 ; *Smith* v. *Mayor, etc.*, 68 N. Y. 557 ; *Huttemier* v. *Albro*, 18 id. 48 ; *Townsend* v. *Hayt*, 51 id. 656 ; *Cox* v. *James*, 59 Barb. 144 ; *Pratt* v. *B. C. R. Co.*, 19 Hun, 30 ; *Hills* v. *Miller*, 3 Paige, 254 ; *Burr* v. *Mills*, 21 Wend. 296 ; *Lansing* v. *Wiswall*, 5 Den. 213 ; *Wells* v. *Garbutt*, 132 N. Y.

430.) The plaintiff or her grantors would not lose the appurtenant right of way by simple nonuser. There is no evidence of abandonment. The fact that there is no proof of the use of the lane by plaintiff's grantors from 1866 to 1882, can have no effect to impair the plaintiff's right. (*Townsend* v. *McDonald,* 12 N. Y. 381; *Smyles* v. *Hastings,* 22 id. 217; *Pope* v. *O'Hara,* 48 id. 447; *Snell* v. *Levitt,* 39 Hun, 227; 110 N. Y. 595; *Welsh* v. *Taylor,* 50 Hun, 137; 134 N. Y. 450; *Jewett* v. *Jewett,* 16 Barb. 150; *Crain* v. *Fox,* 16 id. 184; *Longendyck* v. *Anderson,* 59 How. Pr. 1; *Day* v. *Walden,* 46 Mich. 575; *Richle* v. *Herrlings,* 38 N. J. 20; *Arnold* v. *Stevens,* 24 Pick. 106; *Hayford* v. *Spokefield,* 100 Mass. 49; Code Civ. Pro. § 368; *Hinkley* v. *Cronse,* 125 N. Y. 730; *Corning* v. *Gould,* 16 Wend. 531.) The representations of William Hosmer to Irish, during the negotiations for the purchase of plaintiff's lot were competent evidence of the fact that the grantor had not abandoned the right of way, and that he intended to pass title thereto as appurtenant to the land. (*Abeel* v. *Van Gelder,* 36 N. Y. 513; *Ahern* v. *Goodspeed,* 72 id. 108; *Nilch* v. *Louis,* 31 Ill. 446; *Dempsey* v. *Kipp,* 61 N. Y. 471; *McMaster* v. *Ins. Co.,* 55 id. 222; *Brown* v. *Thurber,* 77 id. 613; *Sprague* v. *Hosmer,* 82 id. 470; *L. M. Co.* v. *S. Co.,* 88 id. 592.) The defendant having taken title to lot number fifteen, under a deed which recognized in express terms the public right of way in the lane, cannot claim the land by adverse possession. (*Bridges* v. *Wyckoff,* 67 N. Y. 130; *In re Dept. of Parks,* 73 id. 560; *Ratgaber* v. *Tonawada,* 13 N. Y. Supp. 957.) To establish title by adverse possession the defendant must prove actual occupation or possession, founded upon paper title, for a period of twenty years. (*Smyles* v. *Hastings,* 22 N. Y. 217; *Miller* v. *L. I. R. R. Co.,* 71 id. 380; *Pope* v. *Hanmer,* 74 id. 240; *Town of East Hampton* v. *Kirk,* 68 id. 459; *Kencken* v. *Voltz,* 110 Ill. 264; *Marble* v. *Price,* 54 Mich. 466; *Kane* v. *N. Y. E. R. R. Co.,* 125 N. Y. 164; *Story* v. *N. Y. E. R. Co.,* 90 id. 122; *Lahr* v. *M. E. R. Co.,* 104 id. 268; *Hussner* v. *B. C. R. Co.,* 114 id. 433; *Shephard* v. *M. R. Co.,* 117 id.

448; *Abendroth* v. *M. R. Co.*, 122 id. 1; *Baron* v. *Korn*, 51 Hun, 401; *Allen* v. *Ormond*, 8 East, 4; *Cushing* v. *Adams*, 18 Pick. 110; *Hastings* v. *Livermore*, 7 Gray, 194; *N. T. Co.* v. *Smith*, 15 Barb. 855; *S. R. Co.* v. *A. & R. R. Co.*, 5 Hill, 170.)

*L. A. Pierce* for respondent. In order to maintain trespass actual possession or title must be shown. (*Danihee* v. *Hyatt*, 12 N. Y. Supp. 465; *Edwards* v. *Noyes*, 65 N. Y. 125.) The plaintiff failed to show any actual possession of the *locus in quo*, either by himself, or by any of the former owners of the premises at any time. (*Edwards* v. *Noyes*, 65 N. Y. 125; *Thompson* v. *Burhans*, 61 id. 52; *Munro* v. *Merchant*, 28 id. 9; *Stuyvesant* v. *Tompkins*, 9 Johns. 465; *Mott* v. *Mott*, 68 N. Y. 246; *Augustide* v. *Britt*, 15 Hun, 395; *Wetmore* v. *Law*, 34 Barb. 515; *Jones* v. *Cowman*, 2 Sandf. 234; *Woodruff* v. *Paddock*, 130 N. Y. 618; *Wallace* v. *Fee*, 50 id. 694; *English* v. *Brennan*, 60 id. 609; *White's Bank* v. *Nichols*, 64 id. 65; *Patten* v. *N. Y. E. R. R. Co.*, 3 Abb. [N. C.] 341.) The word "appurtenances" in the plaintiff's deed, did not extend the grant so as to include the land in question. (*Ogden* v. *Jennings*, 62 N. Y. 526; *Jackson* v. *Hathaway*, 15 Johns. 447.) The plaintiff can only recover on the strength of her legal title. (*Jones* v. *Cowman*, 2 Sandf. 334.) The public never acquired any rights in this lane. The filing of a map showing a street or lane, vests no rights therein in the public, unless used by them or formally accepted by the proper authorities. (*Holdane* v. *Trustees, etc.*, 21 N. Y. 474; *Fonda* v. *Borst*, 2 Keyes, 48; *Ludlow* v. *Oswego*, 25 Hun, 260.) Any easement that ever existed in the lane in question in favor of the former owners of lot No. 16 was abandoned by them long prior to plaintiff's acquiring title, and being once abandoned was extinguished forever. (*Crain* v. *Fox*, 16 Barb. 184; *Corning* v. *Gould*, 16 Wend. 545; *Snell* v. *Leavitt*, 110 N. Y. 595; *Woodruff* v. *Paddock*, 130 id. 618.) The court committed no error in taking the case from the jury and granting the motion for a nonsuit.

(*Patridge* v. *Russell*, 2 N. Y. Supp. 529; *Petit* v. *Shepard*, 32 id. 103; *Green* v. *Collins*, 86 id. 254; *Barclay* v. *Howells*, 6 Pet. 499; *Brooklyn* v. *Kunzman*, 94 N. Y. 276; *Curtis* v. *Aaronson*, 7 Atl. Rep. 836; *Cronk* v. *Wilson*, 40 Hun, 269.) If the conveyance under which plaintiff claims excludes the *locus in quo* she cannot recover, no matter how weak the title of the defendant, who is in possession, may be. She can only recover on the strength of her own title. (*Jones* v. *Cowman*, 2 Sandf. 238.)

Maynard, J. We think the plaintiff and defendant each has title to the fee of the land to the center of the lane in controversey, subject to an easement or common right of passage in the whole lane. Both titles have their source in James T. Smith, who in 1835, owned the entire square, bounded on four sides by public streets, which was then unimproved. He employed one Clark, a surveyor, to subdivide the plot into lots, numbered from one to twenty-nine inclusive, and to make a map of the plot, as thus subdivided, which he filed in the county clerk's office. Upon this map there was a public lane or alley laid out, one rod in width, extending from Washington to Jefferson street through nearly the centre of the plot, and upon which all the lots abutted.

Smith first conveyed the defendant's lot No. fifteen, describing it as surveyed and marked on the map, making the southerly boundary a line running from Washington street westerly one hundred and thirty, and two-thirds feet on an alley, and conluding with the following paragraph: "Together with the right of way of the alley aforesaid, which is forever to be kept open for the use and benefit of the lots to which it is adjacent; said alley being one rod in width and extending from Washington to Jefferson streets, as laid down· on the map before mentioned." The next year Smith conveyed No. sixteen, part of which is now owned by the plaintiff, in which reference is made to the lot as numbered and marked upon the map on file in the county clerk's office, and the northerly line is described as running from Washington street, "thence two hundred and

three feet and one-third of a foot along an alley, etc." In all the intermediate conveyances of both parties, reference is made to this map in describing and locating the premises conveyed. In the defendant's deeds the lane or alley is always mentioned; in one in the exact words of the first conveyance by Smith; and in others as bounded on the south side by a one rod lane or alley according to the map on file, or by a public lane.

Both parties being in privity of title with Smith are estopped by the recitals and descriptions in the conveyances from him, so far as they relate to the estate conveyed, and under the repeated decisions of this court, it must be held that the plaintiff's deeds operate as a conveyance to her of the fee of the southerly half of the lane adjacent to her lot, with the right of passage in common with the defendant in the whole lane. (*Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y. 61; *Perrin* v. *Same*, 36 id. 120; *In re Ladue*, 118 id. 220; *Haberman* v. *Baker*, 128 id. 259; *City of Buffalo* v. *Pratt*, 131 id. 298.) The correctness of this conclusion is not disputed, except upon a single ground. The title to the whole of lot sixteen vested in one William Hosmer in 1865. The lot was then vacant, and in 1881, he conveyed the part now owned by plaintiff to Maria L. Irish, describing it as a part of lot No. sixteen on a map made by James T. Smith, and filed in the clerk's office of Cayuga county, April 24, 1835, with a specific boundary, beginning at the northeast corner of No. sixteen, on the west line of Washington street, and running from thence westerly along the north line of the lot two chains. The north line is the line along the lane, and it is insisted that this description did not include the fee of one-half the lane, but that the title thereto remained in Hosmer and that as the plaintiff must rely upon the strength of her own title, she must fail in this action. But we cannot distinguish this case from the *Bissell* case and other kindred authorities upon this point. It was there held that as between grantor and grantee the conveyance of a lot bounded upon a street in a city carries the land to the centre of the street, and

that there is no distinction in this respect between the streets of a city and country highways, and that the rule applies, although the conveyance contains no reference to the street by name, but the lot is described by the number according to an allotment and survey made by the original proprietor, upon whose map the lot is represented as abutting upon a street, and the depth of the lot is stated by figures, which would not include any part of the street. This construction has so long prevailed that it has become a rule of property, and it is founded upon the presumed intent of the parties to the conveyance. It is not reasonable to infer that the grantor intended to reserve the title to the fee of the narrow strip lying between the physical boundaries of the lot conveyed and the centre of the street or that the grantee understood that any such reservation had been made. The use of the fee of the bed of the street is so inseparably connected with the ordinary use of the adjacent lot that a severance of the two will not be deemed to have been effected unless the presumption that the grantor intended to pass title to the centre of the street is rebutted by other parts of the deed and by the condition and relation of the parties to the lands conveyed and other lands in the vicinity. (*Mott* v. *Mott*, 68 N. Y. 246.) There is nothing inconsistent in the Hosmer deed with this presumption, but its provisions are in harmony with and support it. There is an express reference to the Clark map for the purpose of ascertaining the boundaries of lot sixteen. An examination of that map discloses that the boundaries of the lot carry it to the centre of the lane, so far as it effects a conveyance of the fee, but that the title to a strip eight feet in width on the northerly side of the lot is burdened with an easement for the benefit of the other property holders abutting on the lane. The right to the exclusive possession of the remainder of the lot is conveyed, and to the possession of the strip subject to the easement. The specific description which makes the point of beginning, the northeast corner of the lot as shown upon the map, is the point where the southerly boundary of the lane intersects Washington street, and the line which is

described as running westerly along the north line of the lot, as it appears upon the map, is equivalent to a location of the line along the lane, and is quite as effective to include the fee of one-half of the lane, as if it had in terms so stated. The reservation of the fee of the south half of the lane by Hosmer was not necessary for the purposes of access to the rear of lot sixteen, which was retained by him. The portion of the lot not conveyed by him also abutted on the lane, and he had a common right of passage over it with the other abutting owners, which would afford all the means of access necessary for the full enjoyment of the premises retained by him. The title to the lands embraced in the boundaries of the lane between lots fifteen and sixteen, is not affected by the acts of the lot owners abutting on the lane to the westward in fencing in the lane so as to include one-half thereof within each adjoining lot. This is evidence that the lot owners understood that by virtue of their respective conveyances from Smith each acquired the title to the fee to the center of the lane, but it cannot operate to divest Hosmer, or his grantee, of his title to the south half of the lane adjacent to lot sixteen. The intention to leave the lane as an existing passageway between these two lots might be inferred from the omission to fence it in so as to include one-half thereof in each lot, as the other lot owners had done. It was at least as consistent with such an intention, as with the intention to close it and leave a narrow strip eight feet on the notherly side of plaintiff's lot, still the property of Hosmer. That there was an existing lane between these two lots when Hosmer conveyed to Mrs. Irish, April 9, 1881, is further evidenced by the deed under which defendant claims title executed six months later, in which his lot is described as bounded " on the south by a public lane."

The plaintiff, therefore, established a legal title to the fee of the south half of the lane. The defendant had no right to enter upon it except for the purpose of passage, and his erection of a fence thereon was a trespass for which the plaintiff was entitled to recover in this action, unless the plaintiff's title had been extinguished by an adverse holding, which is inter-

posed as a defense.   But this issue was not tried, as the plain-
tiff was nonsuited, when she rested her case, upon the ground
that she had failed to prove any title to the *locus in quo*, or
any constructive, or actual possession, or occupancy thereof
or right thereto, at the time of the alleged trespass.  Sufficient
had been shown to cast upon the defendant the burden of a
defense and the granting of the nonsuit was error.   The plain-
tiff also sought to recover because the defendant had unlaw-
fully interfered with her use of the north half of the lane as
a passageway, and she was nonsuited upon this branch of her
case, upon the ground that if any easement at any time existed
in the owner of lot sixteen, in or to the lane, it appeared from
the evidence of her witnesses that such easement was aban-
doned long prior to the conveyance to Mrs. Irish, and being
once abandoned was extinguished forever.

From the evidence given by plaintiff's witnesses, we do not
think it can be correctly said that there was, as matter of law,
an abandonment by the owner of lot sixteen, of his easement
in, or right to use the lane as a passageway.   The question of
abandonment is, ordinarily, one of intent, and in this case we
do not think such intent so clearly and conclusively appeared,
that the plaintiff was not entitled to have its existence passed
upon by the jury.   The defendant mainly relies upon the fail-
ure of the plaintiff to show that Hosmer made use of the lane
during the sixteen years that he owned the entire lot, or from
1865 to 1881.   But the plaintiff was not required to show user
by her grantor.   Her right to the easement was obtained by
grant, and if the defendant relied upon an abandonment by
her grantors to defeat the operation of her conveyance, it was
matter that should have been pleaded and proven as a defense.
But three witnesses were examined on the part of the plaintiff.
Only one of them was acquainted with the premises during the
time they were owned by Hosmer.   His failure, upon cross-
examination, to recall any use which Hosmer made of the lane,
can hardly be deemed sufficient in law to establish an abandon-
ment.   Hosmer did not then live on the lot, and it was prac-
tically vacant.   It may well be that he had no occasion to use

it. It is shown by one witness that while Hosmer owned it there was a barway with bars in the fence bordering on the lane, so that he might use it whenever it was convenient or desirable. We know of no inflexible rule of law which requires the owner of an easement of this kind to walk or drive over the passageway at stated intervals, in order to save his title from extinguishment. There was evidence that at one time a double gate had been maintained at the Washington street end of the lane, and that it had been removed in 1882. How long it had existed does not appear; but if for a sufficient time to establish a prescriptive right to its maintenance, it would not, of itself, work an extinguishment of the easement, but only abridge its use to the extent of its interference therewith.

We have examined the authorities to which the respondent's counsel refers, but they do not sustain the holding of the court below, but rather the reverse. They are all to the effect that where an abandonment of an easement is relied upon, there must be clear and convincing proof of an intention in the owner to abandon it as such, which proof is wanting in this case, as it is presented upon the record before us. (*Crain* v. *Fox*, 16 Barb. 184; *Corning* v. *Gould*, 16 Wend. 545; *Snell* v. *Levitt*, 110 N. Y. 595.) The recent case of *Woodruff* v. *Paddock* (130 N. Y. 618) merely holds, upon this point, that an easement may be lost by an adverse possession of twenty years; a proposition indisputably sound, and of which the defendant may have the benefit, if he can establish his defense of that character. The defendant did not purchase his lot, relying upon an apparent abandonment of the easement by the owner of lot sixteen.

His deed recognizes the existence of the lane, and describes his lot as bounded upon it, and his right of property in the lane is burdened with whatever easement may be lawfully imposed upon it.

The judgment and order should be reversed, and a new trial granted, costs to abide event.

All concur.

Judgment reversed.