## LOWENBERG v. BROWN.

(Supreme Court, Appellate Division, Fourth Department. January 20, 1903.)

1. **ALLEYS—DISCONTINUANCE—DEED WITHOUT REFERENCE TO ALLEY—REFERENCE TO MAP.**

   An owner of a tract of land conveyed one lot thereof, which, as shown on a map of the land, was bounded on the north by an alley. The conveyance referred to the tract as shown by the map, and to the lot as bounded in part by the lines of certain other lots, which were shown on the map, and on the north "by a line drawn parallel" to the northerly line of lot No. 4 (the lot just south of it), "and thirty feet distant northerly therefrom." *Held*, that the failure of the conveyance to in terms refer to the alley did not indicate an intention to discontinue it, but the map, having been made the basis of the description in the conveyance, would be read into it, and an easement in the alley would pass.

2. **SAME—CONSTRUCTION OF DEED.**

   The deed conveying "the edifices, buildings, rights, members, privileges, advantages, hereditaments, and appurtenances" appertaining to the lot conveyed, was sufficiently broad to pass an easement over the alleyway.

3. **SAME—TIME OF FILING MAP.**

   The fact that the map was not filed until after the execution of the deed was immaterial.

4. **SAME—INTENTION TO CLOSE ALLEY.**

   The fact that many years before the conveyance was made the owner of the tract of land had conveyed the entire half of the block in the rear of the lot in question, ignoring the alley, did not indicate an intention to close that part of the alley running to the rear of the lot.

5. **ADVERSE POSSESSION—USE OF ALLEYWAY.**

   "Open, visible, continuous, and undisputed" user of an alley during the period prescribed by law of itself establishes an easement therein.

Appeal from trial term, Oneida county.

Ejectment by Adolph Lowenberg against Emma Brown. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

W. L. Goodier, for appellant.

Henry F. Coupe, for respondent.

¶ 2. See Easements, vol. 17, Cent. Dig. §§ 37, 68.

SPRING, J. This is an action of ejectment to recover a strip of land 20 feet wide, which the plaintiff claims to own, and which it is contended is between his lot and that of the defendant. The defendant does not claim title to the fee of the strip, but an easement over it. Benjamin Huntington owned a tract of land in the city of Utica. In 1847 he caused it to be mapped and platted and subdivided into lots, and the map prepared designated the land as part of "Cosby's Manor." On this tract was lot 22, as designated on the map, which was bounded on the west by State street. He divided this block into lots, 10 of which fronted on State street, and each was 30 feet wide, and extended back 100 feet. An open space, 20 feet in width, extending through the center of the block, and between lots 5 and 6, and connecting with State street, was delineated, and not designated as a lot, but evidently intended for an alleyway. In 1852 Huntington conveyed the easterly part of the entire block to the city of Utica, and a schoolhouse was erected thereon. This conveyance was made without reference to the alleyway, and the easterly part of the alleyway was closed up. At the time of that conveyance Huntington was still the owner of these 10 lots to which reference has been made. In 1866 the executors of Huntington conveyed to one Jacob Schremp lot No. 5, which was the one immediately contiguous to the said alleyway on the south. This conveyance referred to the tract of land as delineated "on a map of part of great lot No. 97 in Cosby's Manor," and referring to the lot and block numbers, and then described it as "thirty feet in front (on State street) and rear, and one hundred feet deep, bounded westerly by the easterly line of State street, easterly by the westerly line of lot No. 14 in said block, * * * southerly by the northerly line of lot No. 4 in said block, * * * northerly by a line drawn parallel to said last-mentioned line and thirty feet distant northerly therefrom." It will be observed that this conveyance does not refer in terms to the alleyway. It is the contention of the appellant that this indicated an intention on the part of the grantor to discontinue the alley. We cannot concur in this contention. The basis of the conveyance is the map and the lots and blocks platted thereon are distinctly referred to, so that the map is read into the conveyance, and whatever benefits or privileges are incident to the use of plaintiff's lot run along with the conveyance. While in most conveyances, where an easement passes as an appurtenance to the grant, it is referred to as a boundary, or in specific terms in the deed, that is not essential. In Bissell v. Railroad Co., 23 N. Y. 61, one Mumford owned a tract of land in the city of Rochester, and subdivided it into lots. He sketched upon the map a street denominated "Erie Street," which was not in fact opened as a highway. In the conveyance to the plaintiff, as well as in the other deeds, the lots designated on the map were referred to, but no reference was made to Erie street. The court of appeals held that, notwithstanding this omission, the plaintiff acquired title to the center of Erie street. This case was followed in this particular in Hennessy v. Murdock, 137 N. Y. 317, 322–323, 33 N. E. 330. In the conveyance to Schremp the deed purports to transfer "the edifices, buildings, rights, members, privileges, advantages, hereditaments, and appurtenances" appertaining

to the lot conveyed, which terms are sufficiently broad to include the easement over the alleyway. At the time of the conveyance to Schremp the map had not been filed, but was filed in May of the year following. We must assume, however, that, as the map referred to was the sole basis of the description incorporated in the deed, the land was sold with particular reference to whatever appeared upon the map, and that the grantee was cognizant of the alleyway set out thereon.

It is urged by the counsel for the appellant that by conveying the easterly part of this block and ignoring the strip of land mentioned it indicated an intention on the part of the grantor to close up this alleyway. The conveyance to Schremp and the filing of the map occurred long after this, and indicated that the existence of this alleyway still remained undisturbed, extending back to the rear of the lots fronting on State street.

After Schremp acquired the title to his lot, he erected a dwelling thereon, and used this strip of land to suit his convenience. He piled ashes upon it, and drew his coal over it. In 1867 B. Huntington Wright and Henrietta Wright purchased lot No. 6 from the executors of Huntington, and the description included this right of way. Prior to this time one Fowler had purchased lot No. 11, which is immediately in the rear of the lots from 6 to 10, inclusive, and his conveyance extended to the center of this strip without any allusion to it. In 1868 Fowler erected a barn on the alleyway adjacent to the premises of Schremp. Schremp at once complained that this was an alley, contending, however, that it belonged to the city of Utica, and Fowler caused the barn to be removed from the alley. Schremp owned his lot a few years, and sold it, and there have been several grantees following along in his title since that time. The proof shows that each of these owners and occupants enjoyed the use of this strip of land as an incident or servitude attached to lot No. 5. These occupants hauled wood and coal over it, piled their ashes and rubbish upon it, and drew over it the lumber to build an addition to the building, piled lumber upon it; and, so far as appears, this use was open, notorious, and undisturbed during this whole period down to the time of the commencement of this action. It is to be noted that during this period since 1867, there has been a dwelling house upon lot No. 6, and that lot during the whole period has been occupied, but the owner or occupant has not disputed the right of way in question. The referee has found upon evidence amply warranting that finding that this use of the alley "was open, visible, continuous, and undisputed," which user of itself establishes the easement. Of course, during the same period the occupants and owners of lot No. 6 exercised a like enjoyment of this strip. The servitude was attached to both lots, and consequently the user of one owner did not exclude a similar enjoyment by the other contiguous possessor. There is no hostility to this position in the fact that the fee of the strip was parted with by the original owner. The right to the use of the alleyway was appurtenant to the dominant estate, and does not include the fee of the land. We think the judgment should be affirmed, with costs to the respondent.

Judgment affirmed, with costs to the respondent. All concur.