ADOLPH LOWENBERG, Appellant, v. EMMA BROWN, Respondent.

*Conveyance of land laid out on a map as abutting upon an alley, not referring to the alley, not evidence of intent to discontinue the alley — under what clause an easement in the alley passes — proof of adverse user.*

In 1847, Benjamin Huntington, who was the owner of a tract of land, caused the same to be mapped and platted. One of the blocks, as delineated on this map, was divided into lots, ten of which were bounded on the west by a street called State street. Each of such lots was thirty feet wide and one hundred feet deep. Between lots No. 5 and No. 6 was an open space twenty feet wide extending in an easterly and westerly direction through the block. This open space was not designated as a lot, but was evidently intended as an alley.

In 1852 Huntington conveyed the southeasterly quarter of the tract to the city of Utica, by a description which embraced the southerly half of the easterly portion of the alley, although it made no reference to the alley. The city thereupon closed the portion of the alley conveyed to it.

In 1857 Huntington's executors conveyed to one Whitaker and in 1862 to one Fowler, respectively, the lots lying to the north of the easterly portion of the alley by a description which included the northerly half of the easterly portion of the alley, but made no allusion thereto.

In 1866 Huntington's executors conveyed to one Schremp lot No. 5, viz., the lot lying southerly of the westerly portion of the alley, by a deed which referred to the map and described the land conveyed as follows: "30 feet in front on State street and rear, and 100 feet deep, bounded westerly by the easterly line of State Street, easterly by the westerly line of lot No. 14 in said Block * * * southerly by the northerly line of lot No. 4 in said Block * * * northerly by a line drawn parallel to last-mentioned line and 30 feet distant northerly therefrom."

This deed also conveyed "the edifices, buildings, rights, members, privileges, advantages, hereditaments and appurtenances" appertaining to the lot conveyed, but did not refer to the alley in terms.

In 1867 the map was filed and in the same year Huntington's executors conveyed to a person named Wright lot No. 6, viz., the lot lying northerly of the westerly portion of the alley, by a deed, the description of which included the alley.

Schremp built on his premises shortly after the conveyance to him, and for a period of thirty years he and his grantees used the alley as an appurtenance to his lot. Such user, so far as appears, was open, notorious and undisturbed. During the same period the owners of lot No. 6 exercised a like enjoyment of the alley.

*Held,* that the fact that the deed to Schremp did not refer in terms to the alley did not disclose an intention on the part of the grantors to discontinue the alley;

That the clause in such deed conveying "the edifices, buildings, rights, members, privileges, advantages, hereditaments and appurtenances" appertaining to the lot conveyed, was sufficient to include the easement in the alley;

That the evidence established an adverse user for the statutory period which was, of itself, sufficient to confer on Schremp's successor in title an easement in the alley.

APPEAL by the plaintiff, Adolph Lowenberg, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Oneida on the 11th day of August, 1900, upon the report of a referee dismissing the complaint upon the merits.

The following is the portion of the map referred to in the opinion on which the *locus in quo* is delineated.

*W. L. Goodier,* for the appellant.

*Henry F. Coupe,* for the respondent.

SPRING, J. :

This is an action of ejectment to recover a strip of land twenty feet wide, which the plaintiff claims to own, and which it is contended is between his lot and that of the defendant. The defendant does not claim title to the fee of the strip, but an easement over it.

Benjamin Huntington owned a tract of land in the city of Utica. In 1847 he caused it to be mapped and platted and subdivided into lots, and the map prepared designated the land as part of Cosby's Manor. On this tract was lot 22 as designated on the map which was bounded on the west by State street. He divided this block into lots, ten of which fronted on State street, and each was thirty feet wide and extended back one hundred feet. An open space, twenty feet in width, extending through the center of the block and between lots 5 and 6 and connecting with State street was delineated and not designated as a lot, but evidently intended for an alleyway. In 1852 Huntington conveyed the southeasterly quarter of the entire block, including the southerly half of the easterly part of the alley, to the city of Utica and a schoolhouse was erected thereon. This conveyance was made without reference to the alleyway, and the southerly half of the easterly part of the alleyway was closed up. At the time of that conveyance Huntington was still the owner of these ten lots to which reference has been made. In 1866 the executors of Huntington conveyed to one Jacob Schremp lot No. 5, which was the one immediately contiguous to the said alleyway on the south. This conveyance referred to the tract of land as delineated " on a map of part of Great Lot No. 97 in Cosby's Manor," and referring to the lot and block numbers and then described it as " 30 feet in front on State street, and rear, and 100 feet deep, bounded westerly by the easterly line of State Street, easterly by the westerly line of lot No. 14 in said Block  *  *  * southerly by the northerly line of lot No. 4 in said Block  *  *  * northerly by a line drawn parallel to last-mentioned line and 30 feet distant northerly therefrom."

It will be observed that this conveyance does not refer in terms

to the alleyway. It is the contention of the appellant that this indicated an intention on the part of the grantor to discontinue the alley. We cannot concur in this contention. The basis of the conveyance is the map, and the lots and blocks platted thereon are distinctly referred to, so that the map is read into the conveyance, and whatever benefits or privileges are incident to the use of plaintiff's lot run along with the conveyance. While in most conveyances where an easement passes as an appurtenance to the grant it is referred to as a boundary or in specific terms in the deed, that is not essential.

In *Bissell* v. *N. Y. C. R. R. Co.* (23 N. Y. 61) one Mumford owned a tract of land in the city of Rochester and subdivided it into lots. He sketched upon the map a street denominated Erie street, which was not in fact opened as a highway. In the conveyance to the plaintiff, as well as in the other deeds, the lots designated on the map were referred to, but no reference was made to Erie street. The Court of Appeals held that, notwithstanding this omission, the plaintiff acquired title to the center of Erie street. This case was followed in this particular in *Hennessy* v. *Murdock* (137 N. Y. 317, 322, 323). In the conveyance to Schremp the deed purports to transfer "the edifices, buildings, rights, members, privileges, advantages, hereditaments and appurtenances" appertaining to the lot conveyed, which terms are sufficiently broad to include the easement over the alleyway. At the time of the conveyance to Schremp the map had not been filed, but was filed in May of the year following. We must assume, however, that as the map referred to was the sole basis of the description incorporated in the deed, the land was sold with particular reference to whatever appeared upon the map, and that the grantee was cognizant of the alleyway set out thereon. It is urged by the counsel for the appellant that by conveying the easterly part of this block and ignoring the strip of land mentioned, it indicated an intention on the part of the grantor to close up this alleyway. The conveyance to Schremp and the filing of the map occurred long after this, and indicated that the existence of this alleyway still remained undisturbed, extending back to the rear of the lots fronting on State street. After Schremp acquired the title

to his lot he erected a dwelling thereon, and used this strip of land to suit his convenience. He piled ashes upon it and drew his coal over it. In 1867 B. Huntington Wright and Henrietta Wright purchased lot No. 6 from the executors of Huntington, and the description included the fee of all the westerly part of the alley. In 1857 Huntington's executors and trustees conveyed to one Whitaker lot No. 12, which is located in the north of the schoolhouse lot, and included in the description the northerly half of the alley without making any special allusion to it. In 1862, one Fowler had purchased lot No. 11, which is immediately in the rear of the lots from 6 to 10 inclusive, and adjoins the lot conveyed to Whitaker, and his conveyance extended to the center of this strip without any allusion to it. In 1868 Fowler erected a barn on the alleyway adjacent to the premises of Schremp. Schremp at once complained that this was an alley, contending, however, that it belonged to the city of Utica, and Fowler caused the barn to be removed from the alley. Schremp owned his lot a few years and sold it, and there have been several grantees following along in his title since that time, the defendant Brown being the last grantee. The proof shows that each of these owners and occupants enjoyed the use of this strip of land as an incident or servitude attached to lot No. 5. These occupants hauled wood and coal over it, piled their ashes and rubbish upon it and drew over it the lumber to build an addition to the building, piled lumber upon it, and, so far as appears, this use was open, notorious and undisturbed during this whole period down to the time of the commencement of this action. It is to be noted that during this period since 1867 there has been a dwelling house upon lot No. 6, and that lot during the whole period has been occupied, but the owner or occupant has not disputed the right of way in question. The referee has found upon evidence amply warranting that finding that this use of the alley " was open, visible, continuous and undisputed," which user of itself establishes the easement. Of course, during the same period, the occupants and owners of lot No. 6, of which the plaintiff is the last grantee, exercised a like enjoyment of this strip. The servitude was attached to both lots, and consequently the user of one owner did not exclude a similar enjoyment by the other contiguous possessor. There is no hostility to this position in the fact that the fee of the

strip was parted with by the original owner. The right to the use of the alleyway was appurtenant to the dominant estate, and does not include the fee of the land.

We think the judgment should be affirmed, with costs to the respondent.

McLENNAN, WILLIAMS, HISCOCK and NASH, JJ., concurred.

Judgment affirmed, with costs.