RUPPRECHT v. ST. MARY'S CHURCH SOCIETY OF BATAVIA et al.

(Supreme Court, Appellate Division, Fourth Department.   March 17, 1909.)

1. BOUNDARIES (§ 20*)—CONSTRUCTION OF DEED—PROPERTY CONVEYED.
   A deed to a lot lying to the east of an alley, which described the boundaries thereof as commencing at the northwest bounds of the lot on the alley in question, and running southwesterly "on the easterly bounds of said alley," etc., did not convey the fee to any part of the alley.
   [Ed. Note.—For other cases, see Boundaries, Cent. Dig. § 128; Dec. Dig. § 20.*]

2. EASEMENTS (§ 26*)—RIGHTS OF WAY—TERMINATION—SUBDIVISION OF LAND.
   Where a person subdivided a tract, and in his original grants to purchasers of lots conveyed the right of way over an alley laid out, the right can be defeated only by showing that it has been waived or lost in some way known to the law.
   [Ed. Note.—For other cases, see Easements, Cent. Dig. § 72½; Dec. Dig. § 26.*]

3. EASEMENTS (§ 30*)—TERMINATION—ABANDONMENT.
   An easement may be lost by abandonment; but there must be clear and convincing proof of an intention in the owner to abandon it as such.
   [Ed. Note.—For other cases, see Easements, Cent. Dig. § 77; Dec. Dig. § 30.*]

4. EASEMENTS (§ 32*)—TERMINATION—ADVERSE POSSESSION.
   An easement may be lost by an adverse possession of 20 years.
   [Ed. Note.—For other cases, see Easements, Cent. Dig. § 84; Dec. Dig. § 32.*]

5. EASEMENTS (§ 36*)—TERMINATION—ADVERSE POSSESSION—EVIDENCE.
   Evidence *held* to show that the owner of a lot adjoining an alley had held adverse possession of part of the alley for the statutory period, so as to extinguish the easement of right of way of the owners of the lot on the other side of the alley, in the portion so adversely held.
   [Ed. Note.—For other cases, see Easements, Cent. Dig. § 93; Dec. Dig. § 36.*]

Appeal from Special Term, Genesee County.

Action by Eva Rupprecht against St. Mary's Church Society of Batavia and another.   Judgment for plaintiff, and defendants appeal. Affirmed, on the opinion of the referee.

The opinion of Washburn, referee, was as follows:

The first difficulty arising in the disposition of this case is to determine the ownership of the east half of the alley between subdivision lots 15 and 16, which rests largely on the construction of the deed of part of lot 15 from Robinson to Pomeroy in 1849, No. 6 of Abstract B of Plaintiff's Exhibit A.   The boundaries of this deed commence at the northwest bounds of lot 15, on an alley 25 links wide (the alley in question), and continue "running thence southwesterly on the easterly bounds of said alley," etc.   All subsequent deeds of lot 15 have followed this description as to the alley; but in 1884, and thereafter, a clause was added to the description, conveying all rights of the grantor, by use or otherwise, to the right to use the alley in common with other owners adjoining.   Previous to 1849 the deeds on lot 15, as to the alley, read "thence northeasterly, bounding on an alley 25 links wide."   At the time of the conveyance of 1849, Brandon Young owned lot 16.   His easterly line commenced at the northeast corner of lot 16, and ran "thence south, bounding on an alley," etc.   In 1850, six or eight months after the deed to Pomeroy had been given and recorded, Young obtained from David E. Evans, who originally subdivided this tract, a quitclaim of lot 16 and of all the alley between lots

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

15 and 16 (No. 4, Abstract A, Plaintiff's Exhibit A).  Mr. Evans had not been the record owner of lot 16 since he first conveyed it in 1836, nor of lot 15 since his original conveyances in 1827 and 1833.  The rights supposed to have been acquired by Mr. Young under the Evans quitclaim were conveyed in sub-sequent deeds of lot 16; but in recent conveyances the grantors excepted the alley from their covenants of warranty.  It would seem, therefore, that the phraseology of the description in the Pomeroy deed of 1849 was noticed very soon after it was given, and that its legal effect has been the subject of more or less speculation by the interested parties ever since.

If the Pomeroy deed had bounded lot 15 on the west by the west line of lot 15, it would have no doubt conveyed title to the easterly half of the alley, under the authority of Hennessy v. Murdock, 137 N. Y. 317, 322, 33 N. E. 330, 331.  In that case the north line was "from thence westerly along the north line of the lot."  The remark of Judge Maynard, at page 323 of 137 N. Y., and page 331 of 33 N. E., that an examination of the map in question disclosed that the boundaries of the lot carried it to the center of the lane, so far as it effected a conveyance of the fee, was argumentative only.  The so-called Clark map attached to the appeal book in the Hennessy Case shows an alley laid out precisely as in this case, with no line in its center indicating a division of the fee between the two lots, as sought to be inferred from the remark of Judge Maynard above cited.  But the western boundary of lot 15 in the Pomeroy deed is the easterly bounds of the alley, and while by judicial construction, under appropriate circumstances, the west line of lot 15 might be held to mean the center of the alley, I can conceive of no way in which the easterly bounds of the alley can be held to mean the center line of the same alley; nor can the language in the Hennessy Case be strained to that extent.  Rather must this be held to be a case where the presumption of the conveyance of the fee is rebutted "by the use of such words as necessarily exclude the highway from the description of the premises conveyed, as where the description of the prem-ises is bounded upon the exterior line of a highway, or commences at a point upon one side thereof, and thence runs along the side to a point specified." Van Winkle v. Van Winkle, 184 N. Y., at page 203, 77 N. E., at page 35.

The plaintiff is therefore not the owner of the fee of any part of the alley. But the legal effect of the original grants from Mr. Evans was to convey to the grantees and their successors in title the right of way over the alley as laid out, and the right conveyed can be defeated only by showing that it has been waived or lost in some of the ways known to the law.  Among many au-thorities for this proposition may be cited the Hennessy Case, already men-tioned, the subdivision map in which compares very closely with the Evans map in this case; Haight v. Littlefield, 147 N. Y. 338, 41 N. E. 696; Wiggins v. McCleary, 49 N. Y. 346; and Cox v. James, 45 N. Y. 557.  In the last case the plaintiff's description bounded on the south on the north line of the alley, and the authority is peculiarly applicable, as showing the right of the grantee in the Pomeroy deed and his successors under the same description.  It may also be noted that in that case the defendant claimed the whole land embraced in the alley as her own under a subsequent conveyance from the party who originally mapped the tract, a situation not unlike that of the defendant here, arising under the deed from Evans to Young, already referred to.

Pomeroy, therefore, by his deed acquired an easement consisting of the right to use the whole width of the alley, but no interest in the fee thereof.  There is nothing in subsequent deeds of lot 15 altering this right.  Any loss or modi-fication of the right must therefore exist, if at all, by reason of matters apart from the conveyances.  An easement may be lost by abandonment, in which case there must be clear and convincing proof of an intention in the owner to abandon it as such, or it may be lost by an adverse possession of 20 years. Hennessy v. Murdock, 137 N. Y. 326, 33 N. E. 330.  There is no proof here of abandonment, but there is proof from which it may be found that adverse pos-session by Mr. Warren, for very many years the owner of lot 16, has resulted in narrowing the alley to a slight extent.  Mr. Howe, who has known the property since 1852, testifies that the east wing of the Warren house extended to the line of the alleyway.  The plaintiff says that this wing ran "practically" to the west line of the alleyway, and her daughter testifies to substantially the same.  Mr. Wentworth, a surveyor, testifies that he made a survey a few

years ago, when the Warren house was still standing, and found it projected into the alleyway 15 inches, and the eaves in addition to that; that he made a map, and indicated the building as projecting 2 feet on the alleyway. Mrs. Whitcomb, Mr. Warren's daughter, testifies that her father claimed to own the alley under the deed from Mr. Evans; that early in her life there was a fence from the lean-to of the Warren house, commencing, she thinks, 2 or 3 feet east of the house, and running directly north to Ellicott street, which fence was taken away at least 30 years ago. Mr. Hieber, who worked for Mr. Scott, a former owner of plaintiff's property, from 1859 to 1861, and again in 1863, says that the alley was then fenced in on both sides, evidently referring to the same fence on the Warren side as that mentioned by Mrs. Whitcomb. Mr. Cone, a surveyor, says the wing of the Warren house extended into the driveway; but he is unable to say how far.

This and other evidence in the case establishes the fact that the wing or lean-to of the Warren house projected into the alley for a long period of years, and that the use of the westerly part of the alley in line with such projection, and perhaps for a few inches further east, was such as to have worked an extinguishment of the rights of the owners on lot 15 of this part of the alley. On the whole evidence, this extinguishment must be held to apply to the west 2 feet, leaving plaintiff the owner of an easement in the east 14½ feet of the alley. The evidence as to the condition of the sidewalk and the location of the boulders at the entrance to the driveway has not been overlooked. This tends to show that Mr. Warren was endeavoring to move his neighbors towards the east in their use of this alley; but it is not important in the view of the case adopted. Nor is it important just where the traveled part of the right of way was. Plaintiff's rights existed by grant, and, the alley over which she and her grantors had an easement being of a defined width, such rights existed over the whole width, except as narrowed by the adverse possession of the west 2 feet.

No claim for damages being made, the plaintiff should have an injunction protecting her easement of right of way over the easterly 14½ feet of the alley, with costs.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Peck & Moynihan, for appellants.
Russell L. Kensey, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of E. A. Washburn, referee. All concur.

---

ALLEN v. GRAY et al.

(Supreme Court, Special Term, New York County. February, 1909.)

1. FRAUDULENT CONVEYANCES (§ 87*)—ACTION TO SET ASIDE.
    A transfer by an insolvent of certain assets to an estate of which he was trustee, because of a personal debt to the estate, will not be set aside, where it was not made and carried out to hinder and defraud creditors, within Personal Property Law (Laws 1897, p. 511, c. 417) §§ 24, 25, but, was a sale or transfer of a portion of the insolvent's property to one of the creditors with the honest purpose of paying an indebtedness.
    [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 221; Dec. Dig. § 87.*]

2. BANKRUPTCY (§ 303*)—PREFERENTIAL TRANSFER—EVIDENCE.
    The burden is on the trustee in bankruptcy, in an action to set aside a conveyance under Bankr. Act July 1, 1898, c. 541, §§ 60a, 60b, 30 Stat.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes